158 P.3d 595 (2007)
STATE of Washington, Respondent,
v.
Randal Lee CHENOWETH and Barbara Joyce Wood, Petitioners.
No. 77615-6.
Supreme Court of Washington, En Banc.
Argued September 21, 2006.
Decided May 24, 2007.
*597 Oliver Ross Davis, Washington Appellate Project, David Bruce Koch, Nielson Broman & Koch PLLC, Jennifer L. Dobson, Seattle, WA, for Petitioner.
Kimberly Anne Thulin, Whatcom County Prosecuting Attorney's Office, Philip James Buri, Buri Funston Mumford PLLC, James T. Hulbert, Hilary A. Thomas, Whatcom County Prosecutor's Office, Bellingham, WA, for Respondent.
MADSEN, J.
¶ 1 The State obtained a telephonic search warrant based on an informant's uncorroborated tip that Randal L. Chenoweth was operating a methamphetamine lab on his property. Chenoweth and his codefendant, Barbara J. Wood, challenged the validity of the search warrant, contending that the State omitted material facts concerning the informant's background in violation of the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington Constitution. The trial court denied the suppression motion after finding that the warrant affiants did not recklessly or intentionally fail to disclose the information. On appeal, Chenoweth and Wood argued that a search warrant is invalid under article I, section 7 if an affiant negligently *598 fails to disclose material facts to the issuing magistrate. They further argued that the trial court's finding regarding recklessness is not supported by the record and that the search warrant is facially invalid because the supporting affidavit lacked adequate indicia of the informant's reliability. The Court of Appeals rejected each contention. We affirm the Court of Appeals.

FACTS
¶ 2 On February 5, 2003, Nicholas Parker called the Lynden Police Department and reported that Randy Chenoweth was operating a methamphetamine lab at a specific address in Lynden. The tip was relayed to Whatcom Interagency Narcotic Detective Ryan King of the Blaine Police Department, who then contacted Parker. Parker gave King his full name and address and agreed to come to the police department for an interview. Based on the information Parker gave during the interview, King sought and obtained a telephonic search warrant with the assistance of Whatcom County prosecutor Rosemary Kaholokula.
¶ 3 After the magistrate placed King under oath, the prosecutor elicited information from him through a series of questions. The prosecutor asked King to relate what he knew of Parker's criminal history. King said that Parker told him he had spent a year and a day in prison for unlawful possession of cocaine and delivery of a controlled substance. The prosecutor then asked King whether he had verified the information through a criminal records check. King replied that he had not.
¶ 4 King also told the magistrate that Parker said he went to Chenoweth's property earlier that day to try to get his car back. Chenoweth refused to return the car and ordered Parker off the premises. During the visit, Parker went inside the garage and saw various chemicals and equipment that he recognized as components of a methamphetamine lab, including glass flasks containing liquids, ephedrine, canning jars, red phosphorous, tincture of iodine, acetone, coffee filters, Red Devil lye, Drâno, a gas generator, a bottle with a hose, coffee filters, and kerosene.
¶ 5 Parker said that during earlier visits to the property Chenoweth admitted to making methamphetamine in the garage, that he had watched Chenoweth make methamphetamine and actually assisted him by handing him chemicals and equipment, and that Chenoweth gave him and Wood some methamphetamine while he was at the house three or four days earlier.
¶ 6 In concluding, the prosecutor said, "Your Honor, the only thing I would add is that as far as Mr. Parker's criminal history, although Officer King hasn't verified what he said, I can tell the court that I was the prosecutor on that prior criminal case and so I know that to be accurate that he was convicted of a delivery of a drug." Suppl. Clerk's Papers (CP) at 254. The magistrate asked her to swear to the accuracy of that information, and she replied, "I do, I don't remember the time he served, although I do remember that he went to prison for it." CP at 254.
¶ 7 The commissioner issued the search warrant. The next day, the prosecutor sought and obtained an addendum to the search warrant. She stated, "I would just like to put on the record that I had confirmed Nicholas Parker's criminal history from what I recalled yesterday and further thought I would like to ask if the Commissioner would have found probable cause in the absence of that statement." The prosecutor explained that she wanted to avoid being a witness in a proceeding to challenge the warrant. The commissioner replied that Parker's admission of a criminal conviction was somewhat "self-authenticated" because "there is no reason to say that you have a criminal record unless you do," making the prosecutor's confirmation of that record superfluous. CP at 257.
¶ 8 Based on evidence obtained during the searches, the State charged Chenoweth and Wood with possession of precursor materials with intent to manufacture methamphetamine[1] and unlawful manufacture of methamphetamine.[2] *599 The State also charged Chenoweth with two counts of possession of a controlled substance[3] and Wood with one count possession of a controlled substance.
¶ 9 Chenoweth and Wood moved to suppress the evidence, arguing that King and Kaholokula recklessly and/or intentionally omitted facts about Parker's background that would have precluded the magistrate's determination of probable cause, including: (1) Parker's criminal history included several crimes of dishonesty, (2) Parker had been a paid informant for the Bellingham police department, but his contract was terminated because of concerns about his reliability, (3) four years previously, Kaholokula charged Parker with intimidating a witness, (4) two years previously, Kaholokula was aware that Parker made unsubstantiated allegations that his attorney accepted cocaine as payment for his defense, (5) Parker was motivated by revenge in that he was angry with Chenoweth for failing to return his car, (6) Parker was motivated by self-interest in that he expected the police to help him retrieve his car, (7) Parker provided the information in the expectation that the police would pay him. In the alternative, Wood argued that the search warrant is invalid under our state constitution even if the omissions resulted from negligent rather than reckless or intentional conduct.
¶ 10 The trial court held several hearings to explore the defendants' allegations. Verbatim Report of Proceedings (VRP) (Apr. 2, 2003); VRP (May 12, 2003); VRP (May 14, 2003); VRP (June 5, 2003). Following these hearings, the trial court concluded that the omitted facts would have negated probable cause.[4] However, the trial court concluded that the defendants failed to carry their burden of proving that King or Kaholokula recklessly failed to disclose the full extent of Parker's criminal history or his unsuccessful career as a paid informant to the issuing magistrate. The trial court also concluded that Parker was acting as a citizen informant when he informed the police about the methamphetamine lab. Accordingly, the trial court denied the suppression motion.
¶ 11 Chenoweth and Wood appealed, and the Court of Appeals affirmed the convictions in all respects pertinent here.[5]State v. Chenoweth, 127 Wash.App. 444, 111 P.3d 1217 (2005). We granted review at 156 Wash.2d 1031, 134 P.3d 232 (2006).

ANALYSIS

Article I, Section 7
¶ 12 The first question we must answer is whether a warrant is valid under article I, section 7 of the Washington State Constitution when a warrant affiant negligently fails to disclose facts that, if known, would have negated a probable cause determination. The construction of our state constitution is a question of law that we review de novo. State v. Norman, 145 Wash.2d 578, 589, 40 P.3d 1161 (2002).
¶ 13 Under the Fourth Amendment, factual inaccuracies or omissions in a warrant affidavit may invalidate the warrant if the defendant establishes that they are (a) material and (b) made in reckless disregard for the truth. Franks v. Delaware, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); State v. Cord, 103 Wash.2d 361, 366-67, 693 P.2d 81 (1985). A showing of mere negligence or inadvertence is insufficient. Franks, 438 U.S. at 171, 98 S.Ct. 2674; State v. Seagull, 95 Wash.2d 898, 908, 632 P.2d 44 (1981). Wood contends that a negligence standard is required to protect the privacy interests guaranteed by the state constitution, rather than the reckless or intentional standard for material omissions required to *600 invalidate a warrant under the Fourth Amendment.[6]
¶ 14 It is well established that article I, section 7 qualitatively differs from the Fourth Amendment and in some areas provides greater protections than does the federal constitution.[7]State v. McKinney, 148 Wash.2d 20, 29, 60 P.3d 46 (2002). Thus, a Gunwall[8] analysis is unnecessary to establish that this court should undertake an independent state constitutional analysis. State v. Jackson, 150 Wash.2d 251, 259, 76 P.3d 217 (2003).
¶ 15 In determining the protections of article I, section 7 in a particular context, "the focus is on whether the unique characteristics of the state constitutional provision and its prior interpretations actually compel a particular result." City of Seattle v. McCready, 123 Wash.2d 260, 267, 868 P.2d 134 (1994). This involves an examination of the constitutional text, the historical treatment of the interest at stake as reflected in relevant case law and statutes, and the current implications of recognizing or not recognizing an interest. State v. Walker, 157 Wash.2d 307, 317, 138 P.3d 113 (2006). An analysis under article I, section 7 consists of a two-step inquiry: first, whether there has been a governmental intrusion into one's home or private affairs (the "private affairs" prong); and, if so, whether authority of law justifies the intrusion (the "authority of law" prong). McCready, 123 Wash.2d at 270, 868 P.2d 134. In this case, we are concerned only with the "authority of law" requirement of our constitution.
¶ 16 Because article I, section 7 prohibits unlawful governmental intrusions into one's home or private affairs without express limitation, we have held that the "authority of law" prong requires that exceptions to the warrant requirement be jealously guarded.[9]State v. Hendrickson, 129 Wash.2d 61, 72, 917 P.2d 563 (1996). See also State v. Morse, 156 Wash.2d 1, 123 P.3d 832 (2005) (consent search); State v. Kull, 155 Wash.2d 80, 118 P.3d 307 (2005) (plain view); State v. O'Neill, 148 Wash.2d 564, 62 P.3d 489 (2003) (search incident to arrest); State v. Ladson, 138 Wash.2d 343, 979 P.2d 833 (1999) (pretextual traffic stops), State v. Ferrier, 136 Wash.2d 103, 960 P.2d 927 (1998) (consent search); City of Seattle v. Mesiani, 110 Wash.2d 454, 755 P.2d 775 (1988) (investigatory road blocks); State v. Ringer, 100 Wash.2d 686, 674 P.2d 1240 (1983) (search incident to arrest), partially overruled by State v. Stroud, 106 Wash.2d 144, 720 P.2d 436 (1986) (search incident to arrest); State v. Chrisman, 100 Wash.2d 814, 676 P.2d 419 (1984) (exigent circumstances).
¶ 17 In this case police obtained a search warrant prior to entering Wood's home. Thus, the question here is not whether a warrant was necessary to meet the "authority of law" requirement but whether a search warrant lacks "authority of law" if an affiant negligently omits material facts from the supporting affidavit.
¶ 18 To determine the level of protection provided by our state constitution when a search is made pursuant to a facially valid warrant, but which is based on misstatements or omissions, we first consider the constitutional text. As noted, article I, section 7 only requires "authority of law," without amplification, to justify an intrusion into private affairs. As this court has held, "a lawfully issued search warrant provides" authority of law. State v. Gaines, 154 Wash.2d 711, 718, 116 P.3d 993 (2005). In contrast to *601 the Fourth Amendment, which includes a warrant clause, the particular requirements for issuance of a warrant in Washington are embedded in statutes and court rules governing searches and seizures.[10]
¶ 19 Under RCW 10.79.015, "Any . . . magistrate, when satisfied that there is reasonable cause, may also, upon like complaint made on oath, issue [a] search warrant in the following cases, to wit: (3) To search for and seize any evidence material to the investigation or prosecution of any homicide or any felony." CrR 2.3 authorizes a superior court to issue a search warrant upon application by a prosecutor or police officer. CrR 2.3(a). It provides, in relevant part:
A search warrant may be issued only if the court determines there is probable cause for the issuance of a warrant. There must be an affidavit, a document as provided in RCW 9A.72.085 or any law amendatory thereto, or sworn testimony establishing the grounds for issuing the warrant. . . . The evidence in support of the finding of probable cause shall be preserved and shall be subject to constitutional limitations for such determinations and may be hearsay in whole or in part.
CrR 2.3(c).
¶ 20 The rule further requires that the warrant particularly describe the place of the search and the person or items to be seized.
¶ 21 From these sources we conclude that "authority of law" is satisfied by a warrant, issued upon probable cause, established by sworn affidavit, which may be based in whole or in part upon hearsay. However, we find nothing in the language of these provisions that suggest a negligence standard must be applied to misstatements or omissions in a warrant affidavit.
¶ 22 Turning next to prior existing case law, Wood argues that our State's refusal to adopt the analysis of Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) constitutes preexisting state law favoring a highly protective standard for assuring the truthfulness of probable cause determinations based on an informant's tip. In Gates, the United States Supreme Court overruled the Aguilar-Spinelli test,[11] which required that the facts supporting a search warrant adequately establish both an informant's basis of knowledge and reliability, in favor of the more lenient "totality of the circumstances" test. In State v. Jackson, 102 Wash.2d 432, 688 P.2d 136 (1984), we held that article I, section 7 demanded adherence to the Aguilar-Spinelli test. We found the reasoning in Gates to be unpersuasive, concluding that the Court's earlier decisions were better reasoned and more consistent with our precedents. Our holding was anchored in state law precedent that required adequate indicia of an informer's reliability and basis of knowledge even before the United States Supreme Court announced its decisions in Aguilar and Spinelli.
¶ 23 In Jackson, we refused to withdraw these previously recognized constitutional protections, noting that the Aguilar-Spinelli test had been incorporated into this State's article I, section 7 jurisprudence for over 15 years. See Jackson, 102 Wash.2d at 439, 688 P.2d 136. ("Prior reliance on federal precedent and federal constitutional provisions do not preclude us from taking a more expansive view of [article I, section 7], where the United States Supreme Court determines to further limit federal guaranties in a manner inconsistent with our prior pronouncements."). See generally, George R. Nock, Seizure Opportunity, Searching for Theory: Article I, Section 7, 8 U. PUGET SOUND L.REV. 331, 333 (1985) (noting that each of the first seven Washington cases formulating search-and-seizure law on independent state grounds, including Jackson, explicitly rejects a United States Supreme Court decision embodying the Burger Court's retrenchment).
*602 ¶ 24 Contrary to Wood's contention, our refusal to follow Gates does not support rejecting the Franks standard for testing the validity of a probable cause determination. Unlike Gates, in Franks the Supreme Court extended, rather than contracted, the recognized scope of constitutional protections under the Fourth Amendment. Before the Franks decision, neither the United States Supreme Court nor this court recognized the right to challenge the validity of search warrants based on factually inaccurate warrant affidavits.[12]
¶ 25 Under the early decisional law of Washington, a search warrant need not have been supported by an affidavit specifying the probable cause on which a magistrate relied. State v. Voelker, 137 Wash. 156, 158, 242 P. 6 (1926) ("Whether or not this probable cause is sufficient to initiate legal process is to be determined by the judicial officer, and when the judicial officer is so satisfied, process may properly issue without a statement in the warrant or complaint of facts upon which such belief is founded."). See also State ex rel. Hodge v. Gordon, 95 Wash. 289, 163 P. 772 (1917); accord State v. Noah, 150 Wash. 187; 272 P. 729 (1928). Since at least 1918, federal statutory law required search warrants to be supported by a signed affidavit specifically setting forth the facts comprising probable cause. Byars v. United States, 273 U.S. 28, 29, 47 S.Ct. 248, 71 L.Ed. 520 (1927) (citing United States v. Kelly, 277 F. 485 (E.D.N.C.1921)). In contrast, Washington law did not require either a signed affidavit or a contemporaneous record of the basis for a magistrate's probable cause determination until 1973, when this court adopted CrR 2.3. State v. Fields, 85 Wash.2d 126, 530 P.2d 284 (1975) (upholding CrR 2.3 as within the Supreme Court's rulemaking power); 4A Karl B. Tegland, Washington Practice: Rules Practice CrR 2.3 cmt. 5, at 155 (6th ed.2002); see also State v. Walcott, 72 Wash.2d 959, 972-73, 435 P.2d 994 (1967) (Donworth, J., dissenting) (urging adoption of a requirement for a contemporaneous record of sworn testimony supporting a search warrant); State v. Malbeck, 69 Wash.2d 695, 697, 419 P.2d 805 (1966) ("A signed affidavit for a search warrant is not required. . . . RCW 10.79.010 requires only that the application for a search warrant be under oath and that the justice find reasonable cause for the officer's belief."). As the foregoing suggests, Washington actually provided less procedural protection for defendants who sought to challenge the probable cause determination underlying a search warrant than existed under federal law.
¶ 26 There are no early reported Washington decisions involving a warrant challenge based on factual inaccuracies in the allegations comprising probable cause in support of a search warrant. In instances of wrongful search or arrest, the recognized remedy was a tort action for malicious prosecution, requiring proof of both malice and the absence of probable cause.[13] Notably, the element of malice requires proof of wrongful motives or reckless disregard of the rights of an accused. Peasley v. Puget Sound Tug & Barge Co., 13 Wash.2d 485, 502, 125 P.2d 681 (1942). Thus, even the limited remedy available in instances of wrongful search required proof of the affiant's bad faith, a higher standard than negligence.
*603 ¶ 27 Washington courts first considered a veracity challenge to the factual allegations underlying a search warrant after the United States Supreme Court's discussion of the issue in Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964). State v. Hink, 6 Wash.App. 374, 377, 492 P.2d 1053 (1972) ("Neither false affidavits nor material inaccuracies necessary to a determination of probable cause can be sanctioned or condoned. However, this court will not strike down a warrant based upon a good faith affidavit which contains a misstatement that is only of peripheral relevancy.") (citing Rugendorf, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887). See also State v. Lehman, 8 Wash.App. 408, 506 P.2d 1316 (1973).
¶ 28 As of 1974, the United States Supreme Court had not resolved a split among the circuits regarding challenges to the accuracy of warrant affidavits. However, in this state, the Court of Appeals adopted the Seventh Circuit's approach in United States v. Carmichael, 489 F.2d 983, 988 (7th Cir.1973), holding that a search warrant is invalid if a defendant establishes that a government agent either recklessly misrepresented a material fact or intentionally misrepresented any fact, whether or not material. State v. Goodlow, 11 Wash.App. 533, 535, 523 P.2d 1204 (1974); see also State v. Sewell, 11 Wash.App. 546, 524 P.2d 455 (1974) (denying suppression motion where alleged inaccuracies were made in good faith and were immaterial).
¶ 29 Finally, in Franks, 438 U.S. at 155-56, 171, 98 S.Ct. 2674 the United States Supreme Court held that material factual inaccuracies would void a warrant only if they were made with "deliberate falsehood" or as a result of "reckless disregard for the truth." If the defendant makes this preliminary showing, and at an evidentiary hearing establishes the allegations by a preponderance of the evidence, the material misrepresentation will be stricken from the affidavit and a determination made whether, as modified, the affidavit supports a finding of probable cause. Franks, 438 U.S. at 171, 98 S.Ct. 2674. If the affidavit fails to support probable cause, the warrant will be held void and evidence obtained pursuant to it excluded. Id. The Franks test for material misrepresentations also applies to allegations of material omissions. United States v. Martin, 615 F.2d 318 (5th Cir.1980); Cord, 103 Wash.2d at 367, 693 P.2d 81.
¶ 30 This court first applied the Franks standard in Seagull, 95 Wash.2d 898, 632 P.2d 44. In Seagull, we rejected a challenge to the validity of a search warrant where the police affiant inaccurately, but in good faith, mistook a tomato plant for marijuana. Quoting Franks, we held that "`[a]llegations of negligence or innocent mistake are insufficient.'" Seagull, 95 Wash.2d at 908, 632 P.2d 44 (quoting Franks, 438 U.S. at 171, 98 S.Ct. 2674). In Cord, we addressed a warrant challenge based on material omissions from the warrant affidavit and again rejected the challenge because the defendant failed to demonstrate reckless or intentional misconduct. We also refused to consider the petitioner's request to adopt California's modification of the Franks standard for failure to adequately brief the issue. Cord, 103 Wash.2d at 369, 693 P.2d 81; see also State v. Clark, 68 Wash.App. 592, 844 P.2d 1029 (1993) (refusing to undertake independent state constitutional analysis for failure to adequately brief the issue of whether article I, section 7 demands a departure from the Franks standard), aff'd 124 Wash.2d 90, 875 P.2d 613 (1994).
¶ 31 In sum, Washington courts have consistently applied the Franks standard, requiring a showing of reckless or intentional misstatements or omissions of material facts. See, e.g., State v. Olson, 74 Wash.App. 126, 872 P.2d 64 (1994) (stating power consumption was twice normal usage did not materially affect probable cause and was not shown to be a reckless or intentional misstatement), aff'd 126 Wash.2d 315, 893 P.2d 629 (1995); State v. Taylor, 74 Wash.App. 111, 872 P.2d 53 (1994) (failing to specify that a controlled buy occurred outside of the house to be searched was immaterial and apparently innocent); State v. Lane, 56 Wash.App. 286, 786 P.2d 277 (1989) (omission of informant's criminal history, current drug use, and pending charges was not material or misleading because magistrate could reasonably infer those facts from informant's participation in *604 controlled drug buy); State v. Moore, 54 Wash.App. 211, 773 P.2d 96 (1989) (trial court properly denied Franks hearing based on alleged factual inaccuracies of nongovernmental informant). Thus, our prior case law does not suggest a heightened standard for veracity challenges to a facially valid warrant. But we have not considered whether this is the appropriate standard under our state constitution.
¶ 32 In resolving a question of first impression concerning the scope of article I, section 7, we may consider well-reasoned precedents from federal courts and sister jurisdictions. State v. Murray, 110 Wash.2d 706, 709, 757 P.2d 487 (1988). Although not binding on this court, such precedents may provide persuasive authority. City of Seattle v. Mighty Movers, Inc., 152 Wash.2d 343, 356, 96 P.3d 979 (2004).
¶ 33 Turning first to federal case law, the reckless or intentional standard adopted by the Franks Court is grounded in the language of the warrant clause of the Fourth Amendment, "no warrants shall issue, but upon probable cause, supported by oath or affirmation." The oath requirement "takes the affiant's good faith as its premise." Franks, 438 U.S. at 164, 98 S.Ct. 2674. As the Court explained:
"[W]hen the Fourth Amendment demands a factual showing sufficient to comprise `probable cause,' the obvious assumption is that there will be a truthful showing". . . . This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.
Franks, 438 U.S. at 164-65, 98 S.Ct. 2674 (first alteration in original) (quoting United States v. Halsey, 257 F.Supp. 1002, 1005 (S.D.N.Y.1966)).
¶ 34 Thus, drawing the line at reckless or intentional falsehood, and denying challenges based solely on negligent or inadvertent mistake, rests on the language of the warrant clause, which implicitly protects from reckless or deliberate fabrication of the factual allegations comprising probable cause, but not from unintentional errors. As noted earlier, the statutes and court rules in this State relating to issuing a warrant mirror the warrant clause requirements of the Fourth Amendment.
¶ 35 The Franks decision further rests on the view that an independent magistrate provides constitutionally adequate protection from negligent or inadvertent errors. Limiting veracity challenges to instances of alleged reckless or intentional falsehoods "leaves a broad field where the magistrate is the sole protection of a citizen's Fourth Amendment rights, namely, in instances where police have been merely negligent in checking or recording the facts relevant to a probable-cause determination." Franks, 438 U.S. at 170, 98 S.Ct. 2674; see also AMERICAN LAW INSTITUTE, A MODEL CODE OF PRE-ARRAIGNMENT PROCEDURE § 290.3(1)(a), (b), at 183, 569-70 (1975) (allowing challenges based on an affiant's "honest mistake" would unduly encroach on the magistrate's role).
¶ 36 Like the United States Supreme Court, this court historically followed the common law rule that reviewing courts could not go behind a warrant to challenge the factual allegations comprising probable cause, relying on the view that an independent magistrate provides constitutionally adequate protection from negligent or inadvertent errors. Thus, the Franks test is consistent with this court's historical deference to a neutral magistrate.
¶ 37 Wood argues, though, that while a recklessness standard is consistent with the limited nature and purpose of the federal exclusionary rule, it is not consistent with our State's more protective exclusionary rule.[14]
*605 In particular, Wood contends that this court's rejection of the good faith exception to the exclusionary rule supports a negligence standard, relying on State v. White, 97 Wash.2d 92, 640 P.2d 1061 (1982).
¶ 38 Wood's argument begs the question. Only if the constitution is violated do we reach the question of exclusion. In instances where a warrant is facially insufficient or an arrest is based on an unconstitutional statute, a constitutional violation clearly exists because of the demonstrable absence of "authority of law" to justify the search or arrest. Here, the question is whether a warrant necessarily lacks "authority of law" when a postsearch investigation reveals that the supporting affidavit contains errors made negligently or inadvertently. The fact that article I, section 7 strictly requires the exclusion of evidence obtained by an unlawful governmental intrusion does not aid our determination of whether such an unlawful intrusion occurred in the first instance.
¶ 39 As the Franks court observed, a constitutional violation obviously occurs when an officer secures a search warrant through perjury because the oath requirement implicitly guarantees that probable cause rests on an affiant's good faith. Therefore, the language of the warrant clause, not the policy considerations of the federal exclusionary rule, is the principal reason for drawing the line at recklessness. Our court rules and statutes governing search warrants contain the same basic elements as the warrant clause: a neutral magistrate must make a probable cause determination on the basis of sworn testimony. The Franks rationale for adopting a recklessness standard applies as well to our statutory requirements for a search warrant as to the warrant clause.[15]
¶ 40 Wood also urges us to follow the Supreme Courts of California and Montana, which adopted a negligence standard to veracity challenges under their respective state constitutions.[16] In a pre-Franks decision, Theodor v. Superior Court, 8 Cal.3d 77, 99, 501 P.2d 234, 104 Cal.Rptr. 226 (1972), the California Supreme Court construed state law in the light of the Fourth Amendment and created a "rule of reasonableness" governing veracity challenges to warrant affidavits. Under the California rule, once a defendant establishes the existence of factual inaccuracies, the burden shifts to the State to prove that the errors resulted from reasonable misapprehensions.[17] The court's *606 rationale for permitting challenges to negligent rather than reckless or intentional misstatements is that the Aguilar-Spinelli test is effective only so long as an affiant's factual allegations are accurate: "Regardless of whether misstatements are intentionally false or the product of reasonable or unreasonable cerebration, their ineluctable result is an adverse effect upon the normal inference-drawing process of the magistrate." Theodor, 8 Cal.3d at 96, 104 Cal.Rptr. 226, 501 P.2d 234. See also People v. Cook, 22 Cal.3d 67, 583 P.2d 130, 148 Cal.Rptr. 605 (1978) (affirming Theodor on state constitutional grounds). In People v. Kurland, 28 Cal.3d 376, 384, 618 P.2d 213, 168 Cal.Rptr. 667 (1980), California extended the rule to material omissions as well, stating "An affidavit may be as inaccurate when it omits facts as when it misstates them. The crucial, inference-drawing powers of the magistrate may be equally hindered in either case, with identical consequences for innocent privacy."[18]
¶ 41 Similarly, the Montana Supreme Court reasoned that a search warrant lacking objectively true probable cause is invalid, regardless of the affiant's intent: "[d]ivining the intent of the search warrant applicant is irrelevant; misstatements and inaccuracies, whether intentional or unintentional, may produce the same constitutionally impermissible resulta search based upon something other than probable cause." State v. Worrall, 1999 MT 55, 293 Mont. 439, 447, 976 P.2d 968 (1999).
¶ 42 Other courts and most commentators reject the California and Montana approach, reasoning that a negligence standard is unworkable in the context of a warrant challenge. See, e.g., Carmichael, 489 F.2d at 989; State v. Malkin, 722 P.2d 943, 947 (Alaska 1986); 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 4.4(b), at 543 (4th ed.2004). Wood responds that the California approach presents a workable test: once a defendant establishes that the affidavit contains factual inaccuracies, the burden shifts to the State to prove the errors are reasonable in light of the particular circumstances. But what makes a negligence standard "unworkable" is that it is inherently inconsistent with the concept of probable cause and with the warrant process.
¶ 43 A tolerance for factual inaccuracy is inherent to the concept of probable cause. Probable cause may be based on hearsay, a confidential informant's tip, and other unscrutinized evidence that would be inadmissible at trial. State v. Huft, 106 Wash.2d 206, 209-10, 720 P.2d 838 (1986). A negligence standard goes too far in requiring police to assure the accuracy of the information presented and is inconsistent with the concept of probable cause, which requires not certainty but only sufficient facts and circumstances to justify a reasonable belief that evidence of criminal activity will be found. State v. Patterson, 83 Wash.2d 49, 54, 515 P.2d 496 (1973). In evaluating whether probable cause supports the search warrant, the focus is on what was known at the time the warrant issued, not what was learned afterward. Murray, 110 Wash.2d at 709-10, 757 P.2d 487. The fact that the affiant's information later turns out to be inaccurate or even false is of no consequence if the affiant had reason to believe those facts were true. Cord, 103 Wash.2d at 369, 693 P.2d 81. Probable cause requires more than suspicion or conjecture, but it does not require certainty. "`Good reason for the issuance of a search warrant does not necessarily mean proof of criminal activity but merely probable cause to believe it may have occurred.'" Gunwall, 106 Wash.2d at 73, 720 P.2d 808 (quoting Patterson, 83 Wash.2d at 52, 515 P.2d 496). As the Connecticut Supreme Court recognized in rejecting a negligence standard, insistence on the accuracy of an *607 affidavit poses a catch-22 situation for police: requiring police to thoroughly investigate the accuracy of an affidavit, a feat impossible to do without a warrant. State v. Glenn, 251 Conn. 567, 576, 740 A.2d 856 (1999).
¶ 44 A warrant application is an ex parte proceeding that by nature lacks the safeguards of an adversarial process. See Patterson, 83 Wash.2d at 53, 515 P.2d 496 (noting that a warrant proceeding does not implicate "such concepts as reasonable doubt, preponderance of the evidence, the competence of the witnesses or defendant's right to confrontation and cross-examination of witnesses" and that importing such concepts into the warrant process "would stifle legitimate investigative procedures legitimately to be carried out"). Challenges to the sufficiency of a warrant affidavit are not inconsistent with the ex parte warrant process because they are confined to an examination of the information before the magistrate. Challenges to the factual accuracy of the warrant affidavit based on reckless or intentional falsehood are a limited exception, deemed necessary to thwart illegal governmental conduct. But a negligence standard would threaten to turn the exception into the rule, shifting focus from whether the magistrate could reasonably find probable cause based on facts known at the time to whether the police conducted a reasonably thorough investigation before applying for a search warrant.
¶ 45 Scrutinizing a warrant affidavit for evidence of negligent omissions or misstatements is also inconsistent with our State's established jurisprudence governing search warrant challenges. A search warrant is entitled to a presumption of validity. State v. Wolken, 103 Wash.2d 823, 827-28, 700 P.2d 319 (1985) (recognizing that a defendant is entitled to go beyond the face of the search warrant affidavits only in limited circumstances). The decision to issue a search warrant is highly discretionary. State v. Cole, 128 Wash.2d 262, 286, 906 P.2d 925 (1995). We generally give great deference to the magistrate's determination of probable cause and view the supporting affidavit for a search warrant in a commonsensical manner rather than hypertechnically. State v. Young, 123 Wash.2d 173, 195, 867 P.2d 593 (1994); see also State v. Vickers, 148 Wash.2d 91, 109, 59 P.3d 58 (2002) (incorrect date in warrant affidavit was an immaterial scrivener's error); In re Pers. Restraints of Yim, 139 Wash.2d 581, 989 P.2d 512 (1999) (failure to expressly state that suspect did not possess an explosive's license, an essential element of the crime, did not invalidate warrant). Accordingly, we generally resolve doubts concerning the existence of probable cause in favor of the validity of the search warrant. Vickers, 148 Wash.2d at 108-09, 59 P.3d 58. Shifting focus from the reasonableness of the magistrate's probable cause determination to the reasonableness of the affiant's investigation would permit an end run around the deliberately deferential standard of review that a reviewing court applies to search warrants.
¶ 46 In Patterson, 83 Wash.2d at 57-58, 515 P.2d 496, this court cogently explained why a lenient standard of review is appropriate in evaluating search warrants:
Warrants may be and frequently are sought by police officers under conditions of the utmost urgency with little time or opportunity for consultation with counsel. Supporting documents may have been hurriedly drafted by laymen while in the crucial phase of an investigation under the urgent necessity of obtaining the evidence before it is removed or destroyed. Thus, in order to preserve the evidence from imminent destruction, or obviate an impending crime, or to prevent further criminal activity, circumstances may demand that the application for a search warrant be presented to a judicial officer at late and unusual hours without counsel or prior consultation with counsel. The constitutional provisions against unlawful searches and seizures are not designed to discourage police and investigative officers from seeking the assessment of independent judicial officers, nor to compel the police to take counsel with them at all stages of their investigations. Rather, it is the design of the constitutions to encourage investigating officers to seek the intervention of judicial officers, to require whenever and wherever it is reasonably *608 feasible that the existence or want of probable cause to enter and search a householder's domicile be decided prima facie by a judicial officer and not by officers of the executive branch. . . . In essence, if in the considered judgment of the judicial officer there has been made an adequate showing under oath of circumstances going beyond suspicion and mere personal belief that criminal acts have taken place and that evidence thereof will be found in the premises to be searched, the warrant should be held good.
¶ 47 We note that the warrant process itself reduces the risk of an erroneous search or arrest by interposing a neutral and detached magistrate between the citizen and the officer engaged in the "often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10, 13-14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). The Aguilar-Spinelli test assures that the warrant is predicated on sufficient facts establishing an informant's reliability and basis of knowledge. The Franks standard assures the warrant's integrity by permitting veracity challenges based on reckless or deliberate falsification. A magistrate's ability to make a searching inquiry as to the validity of the facts presented adequately protects citizens from unreasonable invasions of privacy.
¶ 48 In sum, we believe that the text of article I, section 7, preexisting state and decisional law, and the ex parte nature of the warrant process support the conclusion that a search warrant is invalid only if the warrant affiant recklessly or intentionally makes material misstatements or omissions. Accordingly, we hold that under article I, section 7, only material falsehoods or omissions made recklessly or intentionally will invalidate a search warrant.

Absence of Recklessness
¶ 49 Next, Chenoweth contends that the trial court erred in concluding that Kaholokula did not act recklessly in omitting material facts related to Parker's veracity.[19] Chenoweth does not contend, however, that the prosecutor intentionally omitted information regarding Parker's criminal background or his history as a failed informant. Rather, he asserts that Kaholokula acted in reckless disregard for the truth during the second warrant application when she told the commissioner that she had "confirmed" her prior recollection of Parker's criminal history when, in fact, she had not thoroughly checked her own records.[20]
¶ 50 Recklessness may be shown by establishing that the affiant actually entertained serious doubts about the informant's veracity. State v. Clark, 143 Wash.2d 731, 751, 24 P.3d 1006 (2001) (citing State v. O'Connor, 39 Wash.App. 113, 117, 692 P.2d 208 (1984)). "Serious doubts" may be inferred from either (a) an affiant's actual deliberation or (b) the existence of obvious reasons to doubt the informant's veracity or the information provided. Clark, 143 Wash.2d at 751, 24 P.3d 1006 (quoting O'Connor, 39 Wash.App. at 117, 692 P.2d 208). Chenoweth argues that Kaholokula's knowledge that Parker's court file might contain additional derogatory information raises an "obvious reason" to doubt his veracity. He claims that if Kaholokula had thoroughly reviewed her files, she would have recalled that Parker's criminal history included crimes of dishonesty, that she once considered charging him with suborning perjury, and that he had been a paid police informant in the past.
¶ 51 Initially, Chenoweth provides no authority that police must routinely check an *609 informant's criminal history before applying for a search warrant, let alone that a prosecutor must perform an exhaustive review of court files relating to an informant's past criminal conviction.[21] Moreover, at the time of the first warrant application, Kahalokula related what she knew based only on her personal recollection. During the fewer than 24 intervening hours between the first and second warrant applications, she checked her records to the extent necessary to verify the accuracy of what she had told the commissioner but she did not carry out a more extensive investigation; nor did she purport to do so during the second warrant application. The possibility that Parker had a more extensive criminal history was before the commissioner, and Kahalokula did nothing to dispel it. Had the commissioner deemed it material to her probable cause determination, she could have requested additional information on Parker's criminal background. The mere possibility that the court files could reveal additional adverse information does not raise an "obvious reason" to doubt Parker's veracity.
¶ 52 Chenoweth next argues that the court should infer that the prosecutor acted recklessly in not reviewing her own files based on the materiality of the information that she would have discovered had she done so. In support, he cites dicta from Martin, 615 F.2d at 329, suggesting that recklessness may be inferred from proof of the omission itself. Chenoweth argues that the "outcome determinative materiality" of the omissions raises an inference that Kahalokula recklessly portrayed Parker as a reliable citizen informant. Chenoweth overlooks this court's decision in State v. Garrison, 118 Wash.2d 870, 827 P.2d 1388 (1992), in which we expressly disapproved of the Martin dicta, holding that it is improper to infer recklessness from the materiality of an omission. As we noted, "`[s]uch an inference collapses into a single inquiry the two elements"intentionality" and "materiality"which Franks states are independently necessary.'" Garrison, 118 Wash.2d at 873, 827 P.2d 1388 (quoting United States v. Colkley, 899 F.2d 297, 301 (4th Cir.1990)). Garrison controls on this argument.
¶ 53 Finally, the factual findings made in this case support the trial court conclusion that Kaholokua did not act in reckless disregard for the truth by failing to disclose material facts to the commissioner. The trial court found that Kaholokula was not aware of Parker's history as a failed police informant when she applied for the search warrants. Further, the court found that Kaholokula, who prosecutes over 200 cases per year, did not intentionally hide any information from the magistrate and did not act in bad faith in failing to gather relevant information. Accordingly, we hold that the trial court's conclusion that the prosecutor did not recklessly omit material facts in obtaining a search warrant was not clearly erroneous.

Facial Sufficiency of Search Warrant
¶ 54 Wood claims that the search warrant is invalid on its face even assuming the State did not recklessly or intentionally omit material information.[22] Wood argues that Parker's criminal drug conviction precludes an inference that he is a reliable citizen informant. In her view, the magistrate could not reasonably credit the tip in the absence of independent police corroboration. Wood relies primarily on State v. Bittner, 66 Wash.App. 541, 832 P.2d 529 (1992) for her contention. In Bittner, a police affiant characterized a confidential informant as a "`concerned citizen'" who had never previously contacted the police department. Id. at 542, 832 P.2d 529. The officer further stated that a "`thorough criminal records check'" yielded negative results, failing to inform the magistrate that the informant was recently under investigation for impersonating a police officer. Id. After concluding the warrant *610 affidavit was facially insufficient, the Court of Appeals reversed the conviction without determining whether the officer's omission invalidated the warrant. Nevertheless, the court expressed its disapproval of the officer's conduct, noting that he should have disclosed that the informant was under suspicion of a crime since such information is pertinent to assessing the informant's reliability. Bittner, 66 Wash.App. at 548, 832 P.2d 529. Wood asserts that Bittner stands for the proposition that the mere suspicion of an informant's past criminal activity negates an inference that the informant is a reliable citizen.
¶ 55 Wood's reliance on Bittner is misplaced. Unlike in Bittner, here there is no showing that the police affiant knew more about Parker's criminal involvement than was disclosed during the warrant application. Also, here the police affiant did not gloss over the informant's identity by characterizing him as a "concerned citizen" but disclosed his name and known criminal history. Further, Bittner states only that an informant's suspected criminal activity should be disclosed because it is pertinent to a veracity determination; it does not suggest that an informant's criminal history is dispositive or necessarily precludes an inference of reliability that may be raised by the nature of the tip and the disclosure of the informant's identity. See State v. Northness, 20 Wash.App. 551, 558, 582 P.2d 546 (1978). Here, Parker's criminal conviction was a factor that the magistrate could take into account in determining whether to credit his information.
¶ 56 More significantly, whether Parker fits neatly in the category of "citizen informant" is beside the point in this case because the probable cause determination did not rest solely on the presumed inherent reliability of a citizen informant. Even when an informant is not shown to be inherently reliable, other indicia of reliability may establish that the informant was reliable on the particular occasion. State v. Lair, 95 Wash.2d 706, 711, 630 P.2d 427 (1981); Charles W. Johnson, Survey of Washington Search and Seizure Law: 2005 Update, 28 SEATTLE U.L.REV. 467, 530 (1988).
¶ 57 Here, several facts and circumstances are relevant to Parker's veracity. An informant's willingness to come forward and identify himself is a strong indicator of reliability. Such a person may be held accountable for false accusations. Although merely providing a name to police is not sufficient to credit an informant (since a person could easily give a false name), in this case Parker not only provided a name and address but also agreed to come to the police station for an interview. See State v. Duncan, 81 Wash.App. 70, 78, 912 P.2d 1090 (1996); State v. Rodriguez, 53 Wash.App. 571, 576, 769 P.2d 309 (1989).
¶ 58 Parker made statements against his penal interest when he told King that he helped Chenoweth make methamphetamine and used the drug with him during earlier visits to the house. Statements against penal interest are intrinsically reliable because a person is unlikely to make a self-incriminating admission unless it is true. Lair, 95 Wash.2d at 711, 630 P.2d 427 ("Since one who admits criminal activity to a police officer faces possible prosecution, it is generally held to be a reasonable inference that a statement raising such a possibility is a credible one."); see 2 LaFave, supra, § 3.3(c), at 131-32.
¶ 59 King supplied the magistrate with additional facts and circumstances relevant to the commissioner's assessment of Parker's veracity. The fact that Parker had a dispute with Chenoweth over his car provides a plausible explanation for why he had gone to the property that morning and why he decided to contact the police afterward. When read as a whole, the telephonic warrant affidavit provides sufficient information to support the commissioner's decision to credit Parker's tip. Parker's willingness to identify himself and to appear at the police station for an interview, his statements against penal interest, together with the detailed nature of his tip and other facts and circumstances that explain his reasons for being at the scene and for contacting the police, provide an adequate basis for crediting his information. Accordingly, we hold that the search warrant is valid on its face.

*611 CONCLUSION
¶ 60 Under article I, section 7 material misstatements or omissions will invalidate a search warrant only when made recklessly or intentionally. In this case we hold that the trial court's conclusion that the prosecutor did not recklessly omit material facts in obtaining a search warrant was not clearly erroneous and that the warrant contains adequate indicia of the informant's reliability. We affirm the Court of Appeals.
WE CONCUR: GERRY L. ALEXANDER, Chief Justice and TOM CHAMBERS, CHARLES W. JOHNSON, SUSAN OWENS, MARY E. FAIRHURST, JAMES M. JOHNSON and BOBBE J. BRIDGE, Justices.
SANDERS, J. (dissenting).
¶ 61 The majority holds a prosecutor may negligently misrepresent or omit facts concerning an informant's reliability. I disagree. Under article I, section 7 of our state constitution "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." This constitutional right can be properly safeguarded only if the affidavit informs the magistrate of the true underlying circumstances. Without the truth, a magistrate cannot correctly evaluate whether probable cause exists, and any warrant he authorizes lacks the requisite authority of law.
¶ 62 Article I, section 7 of our state constitution requires a higher degree of protection than its federal counterpartthe Fourth Amendment. State v. Myrick, 102 Wash.2d 506, 510, 688 P.2d 151 (1984) ("[T]he unique language of Const. art. 1, § 7 provides greater protection to persons under the Washington Constitution than U.S. Const. amend. 4 provides to persons generally."). We place greater emphasis on ensuring an informant's veracity and reliabilityindeed we have said these factors are essential to our interpretation of article I, section 7. When the United States Supreme Court adopted a less-stringent standard regarding an informant's tips in Illinois v. Gates,[1] we noted the "principal difference between the Gates approach and the Aguilar-Spinelli[[2]] rule is that `veracity' and `basis of knowledge', while still relevant, are no longer both essential." State v. Jackson, 102 Wash.2d 432, 435, 688 P.2d 136 (1984). We therefore rejected the Gates approach and instead adhered to the Aguilar-Spinelli test specifically because Gates did not sufficiently emphasize the veracity and reliability of the informant. Jackson, 102 Wash.2d at 440, 688 P.2d 136 ("We are not persuaded by the United States Supreme Court's rationale for departing from the Aguilar-Spinelli standard. Furthermore, it is inapplicable in the context of Const. art. 1, § 7 analysis.").[3] In particular, we said:
To perform the constitutionally prescribed function, rather than being a rubber stamp, a magistrate requires an affidavit which informs him of the underlying circumstances which led the officer to conclude that the informant was credible and obtained the information in a reliable way.

*612 Only in this way (as the Court emphasized in Aguilar and Spinelli) can the magistrate make the proper independent judgment about the persuasiveness of the facts relied upon by the officer to show probable cause.
Jackson, 102 Wash.2d at 436-37, 688 P.2d 136. This same reasoning requires us to adopt a more stringent standard regarding not only the informant's trustworthiness but also the affiant's trustworthiness. Both the informant's veracity and basis of knowledge are essential to our analysis but become moot if the prosecutor or officer misrepresents the underlying facts or circumstances. "Probable cause is established when an affidavit supporting a search warrant provides sufficient facts for a reasonable person to conclude there is a probability the defendant is involved in the criminal activity." State v. Vickers, 148 Wash.2d 91, 108, 59 P.3d 58 (2002). But the magistrate cannot determine if there is probable cause when the affidavit misinforms him of the underlying circumstances; the magistrate cannot judge whether the informant was credible or obtained the information in a reliable way. Only by ensuring the magistrate is presented with truthful and complete information can he make a proper and independent judgment and act with authority of law.
¶ 63 Other jurisdictions that allow defendants to challenge warrants where material information was either negligently misstated or omitted also premise their decisions on the same sound rationale that a magistrate cannot make a correct determination when he is presented with false information.
However, if a magistrate is presented with false or inaccurate information in an application for a warrant, the inferences he draws from such information are not based on reality but on the fantasies of the misinformed or misinforming affiant. Regardless of whether misstatements are intentionally false or the product of reasonable or unreasonable cerebration, their ineluctable result is an adverse effect upon the normal inference-drawing process of the magistrate.
Theodor v. Superior Court, 8 Cal.3d 77, 96, 501 P.2d 234, 104 Cal.Rptr. 226 (1972);[4]see also State v. Worrall, 1999 MT 55, 293 Mont. 439, 447, 976 P.2d 968 ("If inaccurate or misleading information is included in that application, it must be excised from the application regardless of whether that information was included mistakenly, negligently or intentionally."); State v. McManus, 267 Or. 238, 248, 517 P.2d 250 (1973) ("We conclude that the defendant can contest the accuracy of or the negligent mistake in an affidavit by a motion to suppress before trial without first filing a motion to controvert as provided by statute."). Furthermore, the supreme courts of California and Pennsylvania explicitly based their holdings on the United States Supreme Court's language in Spinelli and Aguilar, which we continue to follow.[5]
*613 ¶ 64 The majority claims holding a prosecutor to at least a negligence standard would create an unworkable system: "A negligence standard goes too far in requiring police to assure the accuracy of the information presented. . . ." Majority at 606.[6] But it is not "unworkable" to demand the State at the very least act reasonably. A negligence standard does not demand an exhaustive investigation as the majority seems to suggest; it only asks whether the affiant (be it the prosecutor or the officer) knew or reasonably should have known either a statement was false or there was additional relevant information. Someone is negligent when he does not act as a reasonable person would under similar circumstances. Here the prosecutor only needed to check the recordboth the informant's criminal history and her own files, since she remembered dealing with the informant in the pastbut failed to take even these rudimentary steps.
¶ 65 Furthermore, the majority claims "the warrant process itself reduces the risk of an erroneous search or arrest by interposing a neutral and detached magistrate between the citizen and the officer. . . ." Majority at 607. But the warrant process is an ex parte proceeding, and it is for want of the usual procedural protections provided by the usual adversarial setting that mandates a strict standard of truthfulness. The defendant, whose privacy right might potentially be violated, is not present at the warrant proceeding, and therefore the magistrate must rely entirely upon the facts as presented by the State. See Commonwealth v. Hall, 451 Pa. 201, 205 n. 5, 302 A.2d 342 (1973) ("Commentators have noted that further review of the affidavits supporting a warrant is necessary because of the ex parte, exigent circumstances of the initial issuance of the warrant."). A magistrate cannot act with authority of law unless the State accurately presents all relevant information. The majority draws an artificial line between recklessness and negligence, and it neither defines those terms nor offers a principled reason why it arbitrarily delineates between the two standards. By enforcing a warrant premised upon misstatements and material omissions, the majority tarnishes the integrity of the judiciary itself.
¶ 66 I dissent.
NOTES
[1] RCW 69.50.440.
[2] Former RCW 69.50.401(a)(1)(ii) (2002).
[3] Former RCW 69.50.401(d) (2002).
[4] The question of whether factual inaccuracies or omissions would have defeated probable cause is resolved only after a finding that the affiant acted recklessly or intentionally. However, the trial court here indicated that it would decide question of materiality in order to avoid a remand hearing. The State does not dispute the trial court's conclusion that the commissioner would have refused to issue the warrant if she had known the full extent of Parker's history.
[5] The Court of Appeals reversed one of Chenoweth's possession convictions, agreeing that double jeopardy barred the prosecution. The State does not seek review of that issue.
[6] Only Wood has requested this court's review of the warrant under article I, section 7.
[7] Article I, section 7 provides "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." CONST. art. I, § 7.
[8] State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986) (setting forth the factors for evaluating whether an issue merits independent state constitutional interpretation).
[9] This is in contrast to the Fourth Amendment, where the uncertain relationship between the reasonableness clause and the warrant clause has resulted in consideration vacillation, at the federal level, between strictly requiring warrants and applying a general reasonableness standard. See Groh v. Ramirez, 540 U.S. 551, 572-73, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (Thomas, J., dissenting) ("[O]ur cases stand for the illuminating proposition that warrantless searches are per se unreasonable, except, of course, when they are not.").
[10] The Fourth Amendment provides, in pertinent part, "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.
[11] The Aguilar-Spinelli test is derived from Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
[12] In Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964), the Supreme Court declined to decide whether a defendant was ever entitled to go behind the face of a warrant, concluding that the alleged factual inaccuracies were immaterial. In dicta, however, we note the Court's first suggestion that such challenges may be permitted.
[13] Early reported cases reveal only civil actions for malicious prosecution following either acquittals or decisions not to pursue prosecution. See Olson v. Haggerty, 69 Wash. 48, 52, 124 P. 145 (1912) (malicious prosecution lies regardless of whether wrongful search results in arrest or prosecution); Ton v. Stetson, 43 Wash. 471, 86 P. 668 (1906) (malice cannot be inferred from lack of probable cause alone); Jones v. Jenkins, 3 Wash. 17, 27 P. 1022 (1891) (malicious prosecution action lies where defendant's perjured testimony supplied probable cause for arrest warrant). The malice requirement was deemed necessary to balance a citizen's interest in freedom from unfounded searches or arrests and society's interest in effective law enforcement. Simmons v. Gardner, 46 Wash. 282, 286, 89 P. 887 (1907) ("`It is for the best interests of society . . . that any citizen who has good reason to believe that the law has been violated shall have the right to cause the arrest of the offender.'") (quoting Ball v. Rawles, 93 Cal. 222, 228, 28 P. 937 (1892)).
[14] The federal exclusionary rule is a judicially-created prophylactic measure designed to deter police misconduct. It applies only when the benefits of its deterrent effect outweigh the cost to society of impairment to the truth-seeking function of criminal trials. In contrast, the state exclusionary rule is constitutionally mandated, exists primarily to vindicate personal privacy rights, and strictly requires the exclusion of evidence obtained by unlawful governmental intrusions. Ladson, 138 Wash.2d at 359, 979 P.2d 833. See State v. Simpson, 95 Wash.2d 170, 622 P.2d 1199 (1980) (automatic standing in possession cases) (rejecting United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980)); White, 97 Wash.2d 92, 640 P.2d 1061 (no good faith exception for arrests made under unconstitutional statute) (rejecting Michigan v. DeFillippo, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)).
[15] The more protective exclusionary rule in Washington is necessary to protect the enhanced right to privacy provided by the state constitution. While the privacy clause of our constitution provides greater protection than the Fourth Amendment reasonableness clause, this difference does not provide a basis for rejecting the Franks standard since that standard relates only to the warrant clause, which is mirrored in Washington law. We decline Wood's invitation to conflate the two clauses.
[16] Colorado and Louisiana also permit challenges to search warrants based on negligent misstatements and omissions. Both states permitted such challenges prior to Franks and adhered to the state law precedents following Franks. People v. Dailey, 639 P.2d 1068 (Colo. 1982); People v. Ellis, 189 Colo. 242, 539 P.2d 132 (1975). See also State v. Lehnen, 403 So.2d 683 (La.1981); State v. Rey, 351 So.2d 489 (La. 1977).
[17] Wood does not separately argue that article I, section 7 shifts the burden to the State to disprove reckless or intentional conduct after the defendant has established the existence of material inaccuracies or omissions. We note, however, that this burden-shifting procedure is founded on the rationale that it is unduly burdensome for the defendant to prove recklessness or intention given that the affiant possesses the relevant information to explain the reasons for factual inaccuracies or omissions. Theodor, 8 Cal.3d at 102, 104 Cal.Rptr. 226, 501 P.2d 234. Burdening the defendant is particularly problematic where the informant's identity remains concealed subject to the informer's privilege. 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 4.4(d), at 558 (4th ed.2004) (questioning the constitutionality of such a result). Our State's more protective exclusionary rule, which strictly requires suppression of evidence obtained through illegal governmental conduct, may require that the State carry the burden of establishing that material misstatements or omissions were not made recklessly or intentionally. However, we need not decide the issue here.
[18] In 1982, California voters passed Proposition 8, which effectively abrogated Theodor, Cook, and Kurland by prohibiting the exclusion of evidence that is admissible under the federal constitution.
[19] Although Wood claims that the trial court erred when it found "an absence of recklessness under the federal standard" in her presentation of issues for review, she fails to provide any argument on this issue.
[20] Chenoweth does not contend that the prosecutor recklessly failed to disclose information during the first warrant application, conceding that substantial evidence supports the trial court's finding that she had no present recollection of Parker's extensive criminal history at that time. We have serious reservations about the materiality of the prosecutor's omissions since the evidence obtained upon execution of the first warrant appears to independently support the second probable cause determination. Nevertheless, since the State conceded materiality and the trial court did not distinguish between the first and second warrant applications when making its findings and conclusions, we will address the issue.
[21] Chenoweth cites United States v. Miller, 753 F.2d 1475 (9th Cir.1985), which rejected a Franks challenge after concluding that police officers were no more than negligent in failing to detect the informant's perjury conviction when conducting a criminal history check. However, in describing the length to which the officers went in checking the informant's background, the Miller court did not imply that the officers would have been reckless in doing less.
[22] Chenoweth did not petition for review of the issue.
[1] 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (adopting a totality of the circumstances test to determine an informant's reliability).
[2] Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
[3] Unlike Gates, which looks to a totality of the circumstances, the Aguilar-Spinelli approach demands a more methodical and searching inquiry into the informant's trustworthiness:

The two prongs of the Aguilar-Spinelli test have an independent status; they are analytically severable and each insures the validity of the information. The officer's oath that the informant has often furnished reliable information in the past establishes general trustworthiness. While this is important, it is still necessary that the "basis of knowledge" prong be satisfiedthe officer must explain how the informant claims to have come by the information in this case. The converse is also true. Even if the informant states how he obtained the information which led him to conclude that contraband is located in a certain building, it is still necessary to establish the informant's credibility.
The most common way to satisfy the "veracity" prong is to evaluate the informant's "track record", i.e., has he provided accurate information to the police a number of times in the past? If the informant's track record is inadequate, it may be possible to satisfy the veracity prong by showing that the accusation was a declaration against the informant's penal interest.
Jackson, 102 Wash.2d at 437, 688 P.2d 136 (citations omitted).
[4] As the majority notes, Theodor and its progeny were seemingly overruled when California voters passed Proposition 8 in 1982, which mandated "relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings." People v. Luttenberger, 50 Cal.3d 1, 6 n. 1, 784 P.2d 633, 265 Cal.Rptr. 690 (1990); see majority at 606 n. 18. Nevertheless, the California Supreme Court continues to cite to and enforce Theodor's holding. People v. Amador, 24 Cal.4th 387, 393, 9 P.3d 993, 100 Cal.Rptr.2d 617 (2000); People v. Diaz, 3 Cal.4th 495, 520, 834 P.2d 1171, 11 Cal. Rptr.2d 353 (1992).
[5] In Theodor, the California Supreme Court said:

The constitutional argument is primarily that the thrust of Aguilar v. Texas, supra, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, with its emphasis on the factual basis for an affiant's conclusion of probable cause, naturally presupposes correct, and not perjured or erroneous facts. "This principle is frustrated not only when a magistrate confronts conclusions rather than facts in the affidavit, but also when substantial falsehoods are the basis on which a magistrate must find the existence or absence of probable cause. In either case, the effect is to destroy the magisterial power to draw an inference from accurate, objective information."
Theodor, 8 Cal.3d at 90 n. 6, 104 Cal.Rptr. 226, 501 P.2d 234 (quoting Jerry Schlichter, Comment, The Outwardly Sufficient Search Warrant Affidavit: What If It's False?, 19 U.C.L.A. L.Rev. 96, 108 (1971)). And in Commonwealth v. Hall, the Pennsylvania Supreme Court commented:
Rather, the right to challenge the truthfulness of recitals in a warrant follows from the command of Aguilar-Spinelli that the magistrate make a "detached and objective determination" of probable cause.
451 Pa. 201, 205, 451 Pa. 201, 302 A.2d 342 (1973) (quoting Commonwealth v. D'Angelo, 437 Pa. 331, 338, 263 A.2d 441 (1970)). Finally, the Montana Supreme Court in Worrall noted the additional rationale of how difficult it is for a defendant to actually prove the affiant's state of mind. How will one be able to show whether a law enforcement officer negligently or intentionally misstated the facts? Worrall, 293 Mont. at 447, 976 P.2d 968.
[6] The majority claims that a negligence standard "is inconsistent with the concept of probable cause, which requires not certainty but only sufficient facts and circumstances to justify a reasonable belief that evidence of criminal activity will be found." Majority at ___. This misconstrues the issuewe are not concerned with the accuracy of the magistrate's assessment of the facts but rather with the accuracy of the facts themselves. How can a magistrate form a reasonable belief if the facts and circumstances upon which he relies are lies and half-truths?