

COURT OF APPEALS DIV I
STATE OF WASHINGTON

2015 JAN 12  AM 8: 44

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, ) | DIVISION ONE |
| ) | |
| Respondent, ) | No. 70652-7-I |
| ) | |
| v. ) | UNPUBLISHED OPINION |
| ) | |
| JUAN G. MARTINEZ-CASILLAS, ) | |
| a.k.a. MARCO ANTONIO ) | |
| SUAREZ-PEREZ, ) | |
| ) | |
| Appellant. ) | FILED: January 12, 2015 |
| ) | |

DWYER, J. — Juan Martinez-Casillas appeals from his convictions of criminal trespass in the second degree and possessing stolen property in the first degree. In seeking reversal of the former, he contends that insufficient evidence was presented to sustain the jury's verdict. In seeking reversal of the latter, he contends that the search warrant pursuant to which the allegedly stolen property was seized was not supported by probable cause. Because neither contention has merit, we affirm.

I

On the morning of August 9, 2012, Lynn Christiansen left her home in Issaquah, Washington and went to work. In the middle of the afternoon,

Christiansen received a call from her daughter, who lives with her, saying that certain items from the house were missing. After instructing her daughter to call the police, Christiansen returned home.

When she returned, Christiansen discovered that the following items, which had been in the house before she left for work that morning, were missing: "two Mac laptops, a green REI backpack and a jar of money." Christiansen also observed that a screen had been removed from one of the windows.

Officer Todd Johnson located the screen underneath a covered patio area near the window to which the screen had been affixed. On inspection, Johnson noticed what appeared to be a handprint on the window. While Johnson was unsuccessful in his attempt to "lift" fingerprints from the window, he did manage to lift several fingerprints from the "rails" to which the screen was attached. This evidence was submitted to the King County Automated Fingerprint Identification System laboratory. Four prints were identified as belonging to Martinez-Casillas.

Several months later, on September 20, 2012, a man with a gun entered a store in Issaquah called Lover's. Victoria Cox, an employee who was working at the time, was told at gunpoint, "Give me all your money." Cox gave the man approximately $971 from the cash register. The man also took her cell phone.

On September 25, a man, whose physical description matched that of the Issaquah robber, robbed a Lover's store located in Redmond, Washington. This man also demanded money from the employee working at the time and also stole her cell phone.

Cox's father was able to track her cell phone, which led the police to a

parking lot in Issaquah. One of the responding officers, who knew Martinez-Casillas and his vehicle from previous encounters, recognized his vehicle in the parking lot. The officers called Cox's cell phone and could hear a buzzing noise—consistent with the sound made when a cell phone is set to "vibrate"—emanating from inside the vehicle.

Thereafter, officers contacted Martinez-Casillas and, after obtaining his consent, performed a search of his vehicle. The search led to the recovery of Cox's cell phone and to the discovery of cash, handgun bullets, and clothing that matched the description given of the outfit worn by the perpetrator in both robberies.

Officers then applied for and obtained a warrant to further search Martinez-Casillas's vehicle, as well as his residence. "Once the search warrant . . . was signed, officers continued their search of the defendant's car, finding large sums of cash, documents of dominion and control and a pellet gun hidden in the trunk that appeared real and matched the description of the gun used by the defendant in the robberies."

When Martinez-Casillas's residence was searched, Detective Kevin Nash, who is knowledgeable with regard to bicycles, recognized an expensive racing bicycle—a Specialized S Works bicycle—in the garage. Nash noticed that the bicycle's front wheel was not attached to the bicycle. He moved the bicycle in order to photograph it and record its serial number.

The following day, Nash learned that a Specialized S Works bicycle had been stolen in Issaquah on June 16, 2012. Nash contacted the victim of the

theft, Jeffrey Hoover, who provided a detailed description of his bicycle that was stolen. Of particular note, Hoover informed Nash that the front wheel of his bicycle—which he valued at $10,000—was not with the bicycle when it was taken. In addition, Hoover described damage to the seat tube of his bicycle, which Nash—after reviewing the pictures that he had taken—observed was consistent with damage to the bicycle found in Martinez-Casillas's garage.

In addition, Detective Ryan Raulerson used an on line database to learn that Martinez-Casillas had pawned two bicycles in late August 2012—one of which was valued at $1,300.

Based on the foregoing information, Raulerson wrote an affidavit for a search warrant, in which he requested permission to search the vehicle, residence, and backpack of Martinez-Casillas, and to seize documents identifying dominion and control for the residence, the Specialized S Works bicycle, and the two laptop computers and one REI backpack taken in the Christiansen burglary. The search warrant was issued. In executing the warrant, officers seized, among other things, the Specialized S Works bicycle in Martinez-Casillas's garage.

Subsequently, Martinez-Casillas was charged by amended information with two counts of robbery in the first degree, one count of possessing stolen property in the first degree, and residential burglary. On May 28, 2013, the case was tried to a jury.

Martinez-Casillas moved to suppress the evidence of the bicycle. The trial court, finding that Nash's act of seizing the bicycle had exceeded the scope of

activity authorized by the search warrant, granted his motion and ordered the bicycle suppressed. However, the trial court later reversed its ruling, reasoning that the proper analysis required insertion of the omitted fact into the affidavit, as well as excision from the affidavit of the pictures taken of the bicycle and the serial number. After conducting this analysis, the trial court concluded that the affidavit established probable cause—thus, the bicycle was ruled admissible.

Martinez-Casillas was found guilty as charged of possessing stolen property in the first degree and both counts of robbery in the first degree. Although he was also found guilty of the lesser included offense of criminal trespass in the second degree, he was acquitted of the charge of residential burglary.

He appeals from his convictions of stolen property in the first degree and criminal trespass in the second degree.

II

Martinez-Casillas contends that insufficient evidence was adduced to support his conviction of criminal trespass in the second degree. He asserts that, because the State offered no evidence indicating that he had entered Christiansen's residence, his conviction must be reversed and the charge against him dismissed. We disagree.

When reviewing a challenge to the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319,

99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). All reasonable inferences are drawn in favor of the verdict and interpreted most strongly against the defendant. State v. Gentry, 125 Wn.2d 570, 597, 888 P.2d 1105 (1995). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). In evaluating the sufficiency of the evidence, circumstantial evidence is as probative as direct evidence. State v. Goodman, 150 Wn.2d 774, 781, 83 P.3d 410 (2004).

"A person is guilty of criminal trespass in the second degree if he or she knowingly enters or remains unlawfully in or upon premises of another under circumstances not constituting criminal trespass in the first degree." RCW 9A.52.080(1); see generally RCW 9A.52.070)(1) (criminal trespass in the first degree is committed where a person "knowingly enters or remains unlawfully in a building"). Thus, "[s]econd degree criminal trespass is applicable only in those situations where the defendant allegedly enters or remains unlawfully on private property not constituting a building, such as fenced land." State v. Brittain, 38 Wn. App. 740, 746, 689 P.2d 1095 (1984). "A person 'enters or remains unlawfully' in or upon premises"—which "includes any building, dwelling, structure used for commercial aquaculture, or any real property"—"when he or she is not then licensed, invited, or otherwise privileged to so enter or remain." RCW 9A.52.010(5)-(6).

Contrary to Martinez-Casillas's position, sufficient evidence was presented at trial to permit a rational trier of fact to conclude that he knowingly entered or

remained unlawfully in or upon Christiansen's premises.

The jury was presented with fingerprint evidence taken from the premises that was identified as belonging to Martinez-Casillas. Christiansen testified that she did not know Martinez-Casillas and that she had not given him permission to enter her home on August 9, 2012. She further testified that, in the time leading up to the day in question, she had not hired anyone to do work either inside or outside of her home, or to wash her windows.

From the physical evidence presented, the jury could reasonably conclude that Martinez-Casillas had reached around the window screen, dislodged it, and set it aside to afford entry into the house through the open window space. This was unpermitted behavior. Based on the foregoing evidence, the jury could conclude beyond a reasonable doubt that Martinez-Casillas knowingly entered or unlawfully remained in or upon Christiansen's premises.

III

Martinez-Casillas next contends that the search warrant authorizing the seizure of the bicycle in his garage was not supported by probable cause. This is so, he maintains, because the warrant was issued solely on Detective Nash's unsubstantiated opinion that Martinez-Casillas would not own such a bicycle. Thus, according to Martinez-Casillas, the bicycle was the fruit of an illegal search and, as such, must be suppressed. Because we conclude that the search warrant was supported by probable cause, we decline to grant Martinez-Casillas appellate relief.

While a search warrant may be issued only upon a judicial determination

of probable cause, the issuance itself is a "highly discretionary" act. State v. Chenoweth, 160 Wn.2d 454, 477, 158 P.3d 595 (2007); State v. Cole, 128 Wn.2d 262, 286, 906 P.2d 925 (1995). Once issued, a warrant is entitled to a presumption of validity, and courts will afford "great deference to the magistrate's determination of probable cause and view the supporting affidavit for a search warrant in a commonsensical manner rather than hypertechnically." Chenoweth, 160 Wn.2d at 477. Thus, "doubts concerning the existence of probable cause" will generally be resolved "in favor of the validity of the search warrant." Chenoweth, 160 Wn.2d at 477.

Although the issuance of a warrant is generally reviewed for abuse of discretion, the assessment of probable cause is a legal conclusion we review de novo. State v. Neth, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). "Probable cause exists where there are facts and circumstances sufficient to establish a reasonable inference that the defendant is involved in criminal activity and that evidence of the criminal activity can be found at the place to be searched." State v. Maddox, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004). "It is only the probability of criminal activity, not a prima facie showing of it, that governs probable cause." Maddox, 152 Wn.2d at 505.

"The mere expression of an officer's opinion, without more, cannot form the basis for the issuance of a search warrant." State v. Spencer, 9 Wn. App. 95, 97, 510 P.2d 833 (1973). However, "if in the considered judgment of the judicial officer there has been made an adequate showing under oath of circumstances going beyond suspicion and mere personal belief that criminal acts have taken

place and that evidence thereof will be found in the premises to be searched, the warrant should be held good." State v. Patterson, 83 Wn.2d 49, 58, 515 P.2d 496 (1973).

The facts presented herein are distinguishable from those cases in which an officer's mere opinion was found not to establish probable cause. For instance, in Spencer, the author of the affidavit upon which probable cause was based, after alleging two sales of controlled substances made within the prior four months, merely stated, "'It is the writer[']s opinion that [the defendant] does possess amphetamines.'" 9 Wn. App. at 96. The court held that because the alleged sales were too remote in time to establish probable cause, the officer's opinion that the defendant was in possession of amphetamines could not form the basis for the issuance of a search warrant. Spencer, 9 Wn. App. at 97.

In this case, the facts set forth in the affidavit went well beyond mere opinion. They were based, instead, on observation, investigation, and corroboration by a group of officers working in tandem.

Nash, who is knowledgeable with regard to bicycles, recognized an expensive racing bicycle in Martinez-Casillas's garage. Nash observed that the front wheel was neither attached to the bicycle nor in sight within the garage.

Suspecting that the bicycle was stolen, Nash proceeded to investigate recent bicycle thefts in the area. After contacting a fellow officer, Nash discovered that a bicycle of the same make and model had been stolen from an automobile parked at an Issaquah gym around three months prior.

Seeking to corroborate his stolen-bicycle theory, Nash contacted the

victim of the theft, Jeffrey Hoover, who provided a detailed description of the bicycle and, in doing so, confirmed that the front wheel had not been with his bicycle at the time of the theft. Hoover valued the bicycle at $10,000.

Prior to submitting the affidavit, Detective Raulerson accessed an on line database from which he learned that Martinez-Casillas had recently pawned two bicycles—one of which was valued at $1,300. Based on this information, as well as that which was provided by Nash, Raulerson submitted the affidavit in question.

The foregoing facts and circumstances, which were presented to and considered by the magistrate, are sufficient to support the magistrate's finding of probable cause. Therefore, neither the search of Martinez-Casillas's garage nor the seizure of the bicycle was performed in an unconstitutional fashion. In view of this, we decline to suppress the evidence of the bicycle and, consequently, refuse to reverse Martinez-Casillas's conviction of possessing of stolen property in the first degree.[1]

---

[1] Martinez-Casillas filed a statement of additional grounds for review. Therein, he set forth two additional arguments, both of which we reject for similar reasons.

First, he avers that he had no connection with the cell phone found in his vehicle, and that he did not know that the bicycle had been stolen. Second, he avers that a witness who saw him at Christiansen's house observed that he was there for the purpose of estimating a cleaning job, and that he had never been to either of the Lover's locations that had been robbed.

These averments go to the weight, rather than the admissibility, of the evidence. It is for the trier of fact to evaluate witness credibility and to determine the persuasiveness of material evidence. State v. Carver, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989). Given our conclusion that sufficient evidence was offered to support the convictions challenged by Martinez-Casillas on appeal, we refuse to disturb the jury's verdict on the proffered factual bases.

Affirmed.

_Dwyer, J._

We concur:

_Trickey, J_                    _Becker, J._