IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of: | No. 86183-2-I |
| MYRON L. WOODS, JR., | DIVISION ONE |
| Petitioner. | UNPUBLISHED OPINION |

CHUNG, J. — In this personal restraint petition, Myron Woods challenges his sentence of life without parole following convictions for five counts of unlawful possession of a controlled substance with intent to deliver, two counts of unlawful possession of a firearm in the first degree, and aggravators for being armed with a firearm and for a major violation of the Uniform Controlled Substance Act (UCSA). He claims he received ineffective assistance from both trial and appellate counsel. We hold that trial counsel did not unreasonably fail to move for a Franks[1] hearing, to move to suppress evidence from a search, or to object to closing argument regarding the UCSA major violation aggravator. We further deny the claim for relief based on his appellate counsel's performance, as he cannot show it was deficient and or that it caused prejudice. As to the conviction for possession with intent to deliver oxycodone, count III, the State concedes the

---

[1] Franks v. Delaware, 438 U.S. 154, 155, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

evidence was insufficient. We accept the concession and, accordingly, grant

Woods relief and reverse the conviction on count III. We otherwise deny Woods's

petition.

BACKGROUND

Woods was convicted in 2019 of two counts of unlawful possession of a

firearm and five counts of unlawful possession of a controlled substance with

intent to deliver, one count each for cocaine, heroin, oxycodone,

methamphetamine, and alprazolam. Division Three of this court affirmed the

convictions on direct appeal. State v. Woods, No. 37985-0-III, 2021 WL 3161832

(Wash. Ct. App. July 27, 2021) (unpublished),

https://www.courts.wa.gov/opinions/pdf/379850_unp.pdf. That opinion set out the

facts of the crimes for which Woods was convicted as follows:

> Myron L. Woods is a level 1 registered sex offender requiring yearly address verification. In March 2017, the Pierce County Sheriff's Department began attempting to verify Woods's address . . . .
> In May 2017, Detective Ray Shaviri contacted Woods's community corrections officer (CCO) . . . , who said he suspected Woods was not living at his registered address. [The CCO] said Woods would arrive at his registered address about 30 minutes after being called. [The CCO] told Detective Shaviri that he thought Woods lived with his girlfriend, Jennifer Johnson.
> On the morning of June 1, 2017, Detective Shaviri went to Ms. Johnson's home. He saw Woods exit the house and talk on the phone. He also saw a white BMW parked next to the garage. The next day, he returned and saw the BMW again, but he did not see Woods.
> On June 6, 2017, Detective Shaviri obtained an order authorizing a trap and trace for Woods's cell phone to aid in his investigation of the crime of failure to register and to learn where Woods was residing.

….

Detective Shaviri continued conducting physical and electronic surveillance of Woods through June 2017. He saw Woods and his BMW at Ms. Johnson's home many times and saw the BMW at a residence on Waller Road. His investigation revealed that Woods was at his registered address for less than five hours in a two and one-half week period, never spent the night, and stayed with Ms. Johnson or at the Waller Road residence. Detective Shaviri found probable cause to arrest Woods for failure to register as a sex offender. Detective Shaviri enlisted the help of Detective Shawn Darby and the Special Investigations Unit to arrest Woods.

*Arrest and subsequent searches*

On June 27, 2017, Detective Darby followed Woods's BMW as he left Waller Road and parked in front of a business. When Detective Darby told Detective Shaviri that Woods was parked nearby, Detective Shaviri instructed him to effect an arrest. When Detective Darby and his coworker approached the vehicle, they saw cash and several small "baggies" on Woods's lap. The baggies were tightly wound, filled with a white and a dark brown substance, and looked typical for street level drug sales. They detained a passenger, who identified himself as Julian Jennings. They arrested Woods and found $3,795 in various denominations on his person.

After Woods was in custody, Detective Darby obtained a search warrant for Woods's vehicles and the Waller Road residence. His probable cause statement in support of the search warrant was based in part on statements given by Mr. Jennings, who said he bought heroin from Woods almost every day.

A search of Woods's BMW revealed two cell phones, a pill bottle filled with 70 alprazolam pills, and 4 amphetamine pills, in addition to the 9 bags of cocaine and heroin seen on Woods's lap before his arrest. The bags of heroin weighed approximately 3 grams each.

A search of the Waller Road residence revealed a surplus of drugs and drug dealing paraphernalia. In a dresser drawer in the bedroom, police found 522 methamphetamine pills and 21 bindles of cocaine weighing approximately 1 gram each. A bindle containing 223 grams of heroin and another 8 bindles each containing 25 grams of heroin were found in the laundry room. They also found tablets with the pharmaceutical markings of oxycodone and loose cocaine on the kitchen table.

The police found numerous items used for the preparation, packaging, and distribution of controlled substances in the kitchen. In the cabinet, detectives found coffee grinders with white powder inside, an electronic money counter, a digital scale covered with white and dark residue, three bottles of caffeine powder, two plastic cups containing black residue, 1,000 empty gelatin caps, and 18 boxes of plastic bags.

A detective discovered a secret compartment in the kitchen table that contained a kilogram (2.25 pounds) of cocaine. The kitchen table was five to seven feet away from the couch in the living room. Underneath a couch cushion, detectives found a loaded firearm. . . . Another firearm was found underneath the cushion of a chair nearby. . . .

Woods, No. 37985-0-III, slip op. at 2-6.

In addition to convicting Woods of the five counts for unlawful possession of a controlled substance with intent to deliver and two counts of unlawful possession of a firearm in the first degree, the jury found two aggravators to count I by special verdict, that Woods was armed with a firearm at the time and that the crime was a major violation of the UCSA. As count I was a third strike under the Persistent Offender Accountability Act, the court sentenced Woods to life without the possibility of parole for that count. The court also imposed additional sentences of 120 months each for the other drug offenses, counts 2-5, and 116 months each for the firearm possession counts, counts 6-7.

Division Three affirmed the convictions in July 2021. Woods filed this petition on December 7, 2022.

DISCUSSION

In order to obtain relief in a timely personal restraint petition, Woods must establish (1) that he was actually and substantially prejudiced by a violation of his

4

constitutional rights; or (2) "that the claimed error constitutes a fundamental defect which inherently results in a complete miscarriage of justice." In re Pers. Restraint of Lord, 152 Wn.2d 182, 188, 94 P.3d 952 (2004) (quoting In re Pers. Restraint of Cook, 114 Wn.2d 802, 812, 792 P.2d 506 (1990)). Woods's petition raises several grounds for relief, all framed as claims of ineffective assistance of either trial counsel or appellate counsel.

I.     Timeliness

As an initial matter, Woods claims his petition is timely.[2] RCW 10.73.090(1) states that "[n]o petition . . . may be filed more than one year after the judgment becomes final." Woods's judgment became final on the "[t]he date that an appellate court *issues* its mandate disposing of a timely direct appeal from the conviction." RCW 10.73.090(3) (emphasis added). "Issue" means "to go out" or "come forth from." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1201 (2002). While the text of Division Three's mandate states its opinion terminated review "on December 1, 2021," the date stamp showing when the court *filed* its mandate states December 7, 2021. Woods filed his petition on December 7, 2022.

We agree with Woods that under RCW 10.73.090(3)(b), the date the Court of Appeals "issued" its mandate was the date it filed the mandate, December 7. Because Woods filed his petition on December 7, 2022, we conclude it is timely.

---

[2] Woods also claims that the State concedes his petition is timely. However, the State's brief does not address timeliness.

## II.    Ineffective Assistance of Trial Counsel

The Sixth Amendment to the federal constitution and article I, section 22 of the Washington Constitution both guarantee the right to effective assistance of counsel. State v. Grier, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To succeed on an ineffective assistance claim, the defendant must show that their counsel's performance (1) fell below an "objective standard of reasonableness" and (2) prejudiced him. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If a personal restraint petitioner meets this burden, then the petitioner has also met their burden to show actual and substantial prejudice. In re Pers. Restraint of Crace, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

There is a "strong presumption" that counsel provided effective representation. In re Pers. Restraint of Davis, 152 Wn.2d 647, 673, 101 P.3d 1 (2004). The presumption can be rebutted " 'by proving [the] representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.' " Davis, 152 Wn.2d at 673 (quoting Kimmelman v. Morrison, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986)). Reasonableness is evaluated " 'from counsel's perspective at the time of the alleged error and in light of all the circumstances.' " Id. (quoting Kimmelman, 477

6

U.S. at 384). Ineffective assistance of counsel is a mixed question of law and fact reviewed de novo. In re Pers. Restraint of Fleming, 142 Wn.2d 853, 865, 16 P.3d 610 (2001).

Woods claims trial counsel was ineffective in several ways: failing to move to suppress evidence seized pursuant to a warrant in violation of article I, section 7; failing to challenge probable cause for the same warrant; failing to challenge his conviction for count III for insufficiency of evidence; and failing to object to the State's argument regarding an aggravator. We address each in turn.[3]

### A. Failure to seek a *Franks* hearing regarding the Waller Road affidavit

Woods argues his trial counsel unreasonably failed to move to suppress evidence seized from "the Waller Road home." Specifically, he argues, first, that the affidavit supporting the warrant is "insufficient under Franks v. Delaware." Second, Woods contends even if the warrant was not reformed under Franks, it was insufficient to provide probable cause to search Waller Road under State v. Thein, 138 Wn.2d 133, 136, 977 P.2d 582 (1999).

We presume the affidavit supporting a search warrant is valid. State v. Atchley, 142 Wn. App. 147, 157, 173 P.3d 323 (2007) (citing Franks, 438 U.S. at

---

[3] At oral argument, Woods conceded he could not claim his trial counsel was ineffective based on potential evidence unearthed subsequent to his trial, including evidence regarding a pole camera and an investigation of Pierce County's Special Investigation Unit, which included the detective who provided the affidavit for the search warrant challenged in this petition. Wash. Ct. of Appeals oral argument, In re Pers. Restraint of Woods, No. 86183-2-I ( Apr. 24, 2024), at 3 min. 57 sec., video recording by TVW, https://tvw.org/video/division-1-court-of-appeals-2024041204/?eventID=2024041204. We accept the concession, as the reasonableness of trial counsel's effectiveness is evaluated " 'from counsel's perspective at the time of the alleged error.' " Davis, 152 Wn.2d at 673 (quoting Kimmelman, 477 U.S. at 384).

171). " 'Good reason for the issuance of a search warrant does not necessarily mean proof of criminal activity but merely probable cause to believe it may have occurred.' " State v. Chenoweth, 160 Wn.2d 454, 476, 158 P.3d 595 (2007) (quoting State v. Gunwall, 106 Wn.2d 54, 73, 720 P.2d 808 (1986) (internal quotation marks omitted)). However, under Franks, a warrant may be invalidated by material factual inaccuracies in the supporting affidavit that are made with reckless disregard for the truth. Chenoweth, 160 Wn.2d at 462; Franks, 438 U.S. at 155-56. Negligence or inadvertence does not meet this standard. Chenoweth, 160 Wn.2d at 462; Franks, 438 U.S. at 171.

To mandate a Franks hearing, a challenger must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause." Franks, 438 U.S. at 155-56. The same test applies to the omission of material facts. State v. Cord, 103 Wn.2d 361, 367, 693 P.2d 81 (1985). If the challenger does not meet these requirements, "the inquiry ends." State v. Garrison, 118 Wn.2d 870, 873, 827 P.2d 1388 (1992). If the challenger meets these requirements, and false representations or omitted material are relevant to the establishment of probable cause, false representations must be set aside, omitted materials must be added and considered, and the reformed affidavit examined. Id. If the reformed affidavit remains sufficient, "the suppression motion fails and no [Franks] hearing is required." Id. But if the

8

reformed affidavit is insufficient, then the challenger "is entitled to an evidentiary hearing." Id.

Two search warrants were issued in this case. First, on June 6, 2017, Detective Shaviri obtained a "trap and trace" order to "ping" Woods's cell phone.[4] Second, Detective Darby obtained a search warrant on June 27, 2017, to search for controlled substances and evidence of drug dealing in Woods's two cars and "[a] detached approximately 800 square foot barn that has been converted into a living space behind the main residence of [address] Waller [R]oad [E]ast."

Woods's claim is based on trial counsel's failure to challenge the second warrant issued on June 27. Woods did not move for a Franks hearing below regarding this warrant, nor did he challenge this warrant in his direct appeal.[5] Here, however, Woods argues his trial counsel was ineffective in failing to seek a Franks hearing because Darby's affidavit "contains material misstatements and omits material facts relevant to probable cause," and he would have prevailed had counsel moved for a Franks hearing. We disagree and conclude that it was reasonable for Woods's counsel not to pursue a Franks hearing when there was no evidence that Detective Darby intentionally or recklessly misstated or omitted evidence necessary to the finding of probable cause.

---

[4] A "ping" is a signal sent in real time to identify the current location of a cell phone by revealing its latitude and longitude coordinates. State v. Muhammad, 194 Wn.2d 577, 582 n.1, 451 P.3d 1060 (2019).

[5] The record shows that both at trial and on direct appeal, he challenged only the first warrant, not the second.

The affidavit included a three-page recitation of Darby's experience. In addition, in another section, Darby went on to explain how he became involved in surveilling Woods:

> Det. Shaviri works for the Sheriff's [D]ept. in the sex offender registration unit and had built a case over a month long investigation on Woods for failing to register as a level one sex offender . . . . Det Shaviri utilized electronic cell phone surveillance via a valid search warrant and corroborated that with physical surveillance on Woods and determined that he was residing in a building behind the main residence at [address] Waller [R]oad . . . . Over the past week Det Shaviri has both electronically and physically surveilled Woods and his [cars] to [address] Waller [R]oad . . . late at night and early in the morning. Det Shaviri stated that Woods would normally leave in the mid-morning hours and conduct short term stops in parking lots all throughout Pierce County and return to this address very late at night. Det Shaviri also determined that Woods has no job or source of income. Det Shaviri advised that there was probable cause to arrest Woods based on his case and requested my assistance with the special investigations unit as we have unmarked cars and are trained in surveillance to further bolster his case and affect the arrest of Woods if he was to leave the residence in either vehicle.

Woods claims that Darby falsely declared Shaviri had determined that Woods had no job or source of income in order "to suggest [that] drug-dealing was his 'job,' " pointing to Shaviri's affidavit for the first warrant, in which Shaviri declared that he was told by another police officer that Woods said he was "working on an on call status as a longshore man at the Port of Tacoma." As the State notes, this inconsistency does not necessarily establish that Darby's statement was false; what Woods told another officer does not establish what Shaviri had determined about Woods's source of income or whether Woods was actually working as a longshoreman. Moreover, "the proper inquiry is not whether

10

the information tended to negate probable cause . . . , but whether the challenged information was necessary to the finding of probable cause." Atchley, 142 Wn. App. at 158 (citing Garrison, 118 Wn.2d at 874). Whether Woods had a job is not necessary to establish probable cause to search for evidence of drug dealing.

Woods also argues that his trial counsel should have requested a Franks hearing because Darby's affidavit "minimized" how long the police lost contact with Woods's car while surveilling him on June 27, the day he was arrested. Detective Darby's affidavit described this surveillance as follows:

> At approximately 1030 hrs. on 06-27-17 I was conducting surveillance on [Waller Road] and witnessed [Woods's] BMW leave the residence. . . . I was able to physically see Woods driving the vehicle. He was lost as he left this parking lot but was found again on Waller [R]oad . . . . A heavy set male later identified as . . . Jennings was witnessed by Deputy Mendoza entering the passenger side of [the] BMW: Det Shaviri requested to affect [sic] the arrest on Woods.

> Woods and Jennings . . . both complied and as I approached the BMW I could clearly see two open Ziploc bags in Wood[s]'s lap. One . . . I immediately recognized as crack cocaine and the second had numerous small knotted up plastic baggies of a black tar like substance that I immediately recognized as pre-weighed and packaged heroin.

> Woods and Jennings were detained and the bags of suspected narcotics were left in the vehicle. I contacted Jennings and read him his Miranda warnings . . . . Jennings stated that he is a heroin addict and has been for several years. . . . He has been purchasing 100.00 dollars of heroin from Woods on almost a daily basis for the past year. Jennings . . . was meeting with Woods to get his daily dose of heroin when we arrived.

Woods argued that this description required a <u>Franks</u> hearing because it does not disclose how long officers lost contact. In a supplemental report to his department made the day after Woods was arrested, Shaviri stated it was "[a]bout 30 minutes." Darby testified at trial that it was "15 minutes." According to the State, Darby's affidavit "acknowledged that police temporarily lost sight of Woods's vehicle," thereby communicating "essential information" to the magistrate that "left open the possibility [that] Woods could have obtained drugs elsewhere," i.e., other than from Waller Road. A "tolerance for factual inaccuracy is inherent to the concept of probable cause." <u>Chenoweth</u>, 160 Wn.2d at 475. We agree with the State that Woods does not show how Darby's failure to state more precisely how long detectives lost track of Woods's car makes his affidavit false, much less intentionally or recklessly so.

Further, Woods contends that "Detective Shaviri did not see [Woods] at the Waller Road home at any point," and did not see any "short term stops" by Woods, but that Darby's affidavit falsely claims Shaviri discovered the car was regularly seen leaving Waller Road and making multiple stops at parking lots before returning to the Waller Road home. However, Shaviri's supplemental report describes how he surveilled Woods "to confirm the accuracy of the information I was receiving electronically. . . . [and] Woods was seen . . . at multiple locations in Pierce County and eventually at night . . . either at" South Cedar or Waller Road. Woods does not show that Darby's affidavit contained misstatements regarding this issue that required a <u>Franks</u> hearing.

12

Finally, Woods argues that Detective Darby's affidavit "utter[ly] fail[s] to mention South Cedar *at all*," which is the street on which Woods's girlfriend lived and where Woods was believed to be living. Woods, No. 37985-0-III, slip op. at 4. He argues this omission "can only have been deliberate" because the South Cedar address "would have caused any rational magistrate to question whether there was probable cause that [Woods] was living at Waller Road." But a failure to mention South Cedar is not a false statement or material omission; a person may reside at multiple houses.[6] Cf. Garrison, 118 Wn.2d at 873 ("Defendant failed to prove anything about reckless disregard for the truth by the omission, except the content of the omission. That is insufficient."). Moreover, "[i]n examining whether an omission rises to the level of a misrepresentation, the proper inquiry is not whether the information tended to negate probable cause or was potentially relevant, but whether the challenged information was necessary to the finding of probable cause." Atchley, 142 Wn. App. at 158 (citing Garrison, 118 Wn.2d at 874). Whether Woods was also residing at South Cedar is not evidence necessary to finding probable cause to search the Waller Road house.

In sum, we conclude that Woods has not established that his trial counsel was deficient by declining to seek a Franks hearing regarding Darby's affidavit

---

[6] The definition of "residence" does not limit a person to one residence. See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1931 (2002) ("the place where one actually lives or has [one's] home as distinguished from [one's] technical domicile"); BLACK'S LAW DICTIONARY 1565 (11th ed. 2019) ("The place where one actually lives, as distinguished from a domicile.").

supporting the Waller Road warrant because Woods could not have shown Darby intentionally or recklessly misstated or omitted evidence necessary to the finding of probable cause. If those requirements are not met, then "the [Franks] inquiry ends." Garrison, 118 Wn.2d at 873. Because counsel was not deficient in failing to request a Franks hearing, we need not reach the second Strickland factor of prejudice as to this claim.

   B. Failure to move to suppress evidence from the Waller Road search

   Next, Woods argues that even if Detective Darby's affidavit did not require a hearing or reformation under Franks, trial counsel was deficient for failing to move to suppress evidence from the Waller Road search because the affidavit was insufficient to establish probable cause. We disagree.

   A search warrant may be issued only upon a determination of probable cause. State v. Cole, 128 Wn.2d 262, 286, 906 P.2d 925 (1995). Generally, we review the validity of a search warrant for an abuse of discretion, giving great deference to the issuing judge. State v. Neth, 165 Wn.2d 177, 182, 196 P.3d 658 (2008).[7] The existence of probable cause is to be evaluated on a case-by-case basis. Thein, 138 Wn.2d at 149.

   Probable cause exists as a matter of law if the affidavit supporting the search warrant contains sufficient facts and circumstances to establish a reasonable inference that the defendant participated in criminal activity and that

---

[7] If, however, a trial court assesses a search warrant affidavit for probable cause at a suppression hearing, then review is de novo. Neth, 165 Wn.2d at 182.

evidence of the crime is at a certain location. Thein, 138 Wn.2d at 140. " '[P]robable cause requires a nexus between criminal activity and the item to be seized, and also a nexus between the item to be seized and the place to be searched.' " Id. (quoting State v. Goble, 88 Wn. App. 503, 509, 945 P.2d 263 (1997)). A nexus must be established by specific facts. Id. at 145. "Absent a sufficient basis in fact from which to conclude evidence of illegal activity will likely be found at the place to be searched, a reasonable nexus is not established as a matter of law." Id. at 147.

Facts that would not support probable cause when standing alone can support probable cause when viewed together with other facts. State v. Garcia, 63 Wn. App. 868, 875, 824 P.2d 1220 (1992). But blanket inferences and generalities cannot be a substitute for the required showing of "reasonably specific 'underlying circumstances' that establish evidence of illegal activity will likely be found in the place to be searched in any particular case." Thein, 138 Wn.2d at 147-48.

In Thein, the affidavit supporting probable cause to search alleged no specific facts applicable to the defendant's residence. 138 Wn.2d at 138-39. The police officers in that case had evidence that the defendant was supplying drugs to a third party and sought a search warrant for the defendant's residence based on statements about "the common practice for drug traffickers" and "the corporate knowledge and experience of other fellow law enforcement officers." Id. Our Supreme Court concluded that these generalized statements were,

standing alone, insufficient to establish probable cause to search the residence. Id. at 148. The court "reiterate[d] that '[p]robable cause to believe that a [suspect] has committed a crime . . . does not necessarily give rise to probable cause to search [their] home.' " Id. (quoting State v. Dalton, 73 Wn. App. 132, 140, 868 P.2d 873 (1994) (internal quotation marks omitted)).

Woods compares Darby's affidavit to the one in Thein, arguing that while "Darby did not declare that drug dealers 'commonly' have certain evidence at their homes[, he] instead said '[d]rug manufacturers, dealers, and users' keep certain records or items – without linking them to being at the home." Even if, in isolation, this statement appears similar to a statement in Thein, unlike the affidavit in that case, which contained *only* such generalized statements, Darby's nine-page affidavit in the present case contains far more than this one statement.

Regarding a nexus between the evidence to be seized and Waller Road, Woods points out "[t]here was no drug activity seen at [Waller Road]." This is correct, but a nexus to search an alleged drug dealer's residence can be established by an affidavit stating the defendant left from and returned to the residence. State v. G.M.V., 135 Wn. App. 366, 372, 144 P.3d 358 (2006) (distinguishing Thein, which relied on "generalized beliefs about the habits for drug dealers"). Unlike in Thein, here, Darby attested to specific facts connecting drug activity to the residence. As in G.M.V., these facts included that Woods left from and returned to the residence, tied to other evidence of drug dealing. Darby stated that Shaviri had been surveilling Woods for two and half weeks both

electronically and physically and had observed Woods at Waller Road and South Cedar. Further, the affidavit specified that Darby "witnessed the . . . BMW leave the [Waller Road] residence," that he "was able to physically see Woods driving the vehicle," and that, when he arrested Woods in the car, he "could clearly see two open Ziploc bags . . . and . . . numerous small knotted up plastic baggies" in the car on "Wood[s]'s lap."

Woods's reply brief attempts to distinguish G.M.V. because the police in that case conducted controlled buys, whereas in his case, the police did not conduct any controlled buys from Woods. However, Woods was arrested with another person, Jennings, who told the arresting officers that he was a heroin addict and had been purchasing $100 worth of heroin from Woods almost daily over the past year. Thus, while different from G.M.V., Darby's affidavit contains facts sufficient to establish Woods was engaged in drug dealing, as well as a nexus between that activity and the house.

Further, Darby's affidavit contains specific statements establishing a nexus between drug dealing and the evidence to be seized, not merely blanket inferences from the "corporate knowledge and experience of other fellow law enforcement officers" and generalities about the "common practice for drug traffickers" as in Thein. 138 Wn.2d at 138-39. Woods was observed driving his BMW and, when he was arrested in that same car, prepackaged "baggies" were found in the car with Woods and Jennings, who stated he had been purchasing heroin from Woods on a daily basis. Because the affidavit was sufficient to

establish probable cause for the warrant to search the Waller Road house, Woods's trial counsel was not deficient for failing to move to suppress evidence obtained pursuant to that warrant.

### C. Failure to move to dismiss count III regarding oxycodone

Woods was convicted of count III for possession with intent to deliver oxycodone. Woods argues that his counsel was ineffective because despite having successfully excluded exhibit 1Q, a bag of blue pills that the State admitted had not been tested, his counsel did not move to dismiss count III or argue insufficient evidence at closing.

Two days before oral argument, in a statement of additional authorities, the State "advise[d] this [c]ourt and Mr. Woods that the State is conceding there is insufficient evidence for Count III." The State's concession rebuts the presumption that trial counsel's failure to move to dismiss count III was a reasonable strategic choice. See Davis, 152 Wn.2d at 673 (the "strong presumption" counsel's representation was effective can be rebutted by showing "the challenged action was not sound strategy"). Moreover, Woods was prejudiced because, but for trial counsel's deficiency, the State concedes the outcome of Woods's trial would have been different: he would not have been convicted of count III. See Strickland, 466 U.S. at 694. Therefore, we accept the State's concession, grant Woods's petition as to count III, and reverse his conviction on that count.

D. <u>Failure to object to closing argument regarding proof of a major violation of the UCSA</u>

Count I of the amended information alleged possession with intent to deliver cocaine, along with a firearms enhancement and a major violation of the UCSA aggravator with respect to cocaine. Woods was convicted as charged on this count, and the jury also found both the firearms enhancement and the major violation aggravator by special verdict.

The UCSA aggravator applies when "[t]he current offense involved an attempted or actual sale or transfer of controlled substances in quantities substantially larger than for personal use." RCW 9.94A.535(3)(e)(ii). Woods argues that trial counsel was ineffective because he failed to object at closing when the prosecutor argued that the major violation aggravator could be proved with evidence of other controlled substances, in addition to cocaine. The State argues that there was nothing for Woods's counsel to object to, as the prosecutor relied in closing only on evidence of cocaine to support the aggravator, so Woods's counsel was not deficient for failing to object. Further, the State argues that Woods cannot show prejudice because a curative instruction would have cured any prejudice and any improper argument was unlikely to affect the verdict. We conclude that Woods's claim fails.

While Woods frames this argument as a failure to object to prosecutorial misconduct, his concern is that the prosecutor used evidence relating to counts other than count I to establish the major violation aggravator despite charging the aggravator only as to count I, for cocaine. To the extent Woods argues the State

19

engaged in prosecutorial misconduct, Woods has insufficiently supported this argument. He provides only a single citation to the legal standard for prosecutorial misconduct and does not analyze how the standard applies. A "party that offers no argument in its opening brief on a claimed assignment of error waives the assignment." Brown v. Vail, 169 Wn.2d 318, 336 n.11, 237 P.3d 263 (2010).

Furthermore, to establish ineffective assistance of counsel, Woods must show both that counsel's failure to object fell below an "objective standard of reasonableness" and that as a result, he was prejudiced. See Strickland, 466 U.S. at 687-88. But Woods does not dispute that the court's instructions properly instructed the jury as to this aggravator, limiting it to count I.[8] And the jury is presumed to follow the court's instructions. State v. Hopson, 113 Wn.2d 273, 287, 778 P.2d 1014 (1989).

In addition, on direct review, Woods challenged the sufficiency of the evidence "that he committed a major controlled substances violation justifying the sentence enhancement." Woods, No. 37985-0-III, slip op. at 21. We concluded that the State presented sufficient evidence supporting the finding that Woods committed a major violation of the UCSA as to count I. Woods, No. 37985-0-III,

---

[8] Instruction No. 35 states:

A major trafficking violation of the Uniform Controlled Substances Act is one which is more onerous that the typical offense. The presence of any of the following factors may identify the offense charged in Count I as a major trafficking violation:
Whether the offense involved an attempted or actual sale or transfer of controlled substances in quantities substantially larger than for personal use.

slip op. at 22-23. Because we have already held the State's evidence—not including evidence relating to other counts—was sufficient to convict Woods of a major violation of the UCSA as to count I, Woods cannot show how the failure to object to the prosecutor's argument prejudiced him.[9] Woods's claim of ineffective assistance of counsel for failing to object to the prosecutor's argument on this aggravator fails.

III.     Ineffective Assistance of Appellate Counsel

Woods argues his appellate counsel "compound[ed] trial counsel's unprofessional error[s]" and "failed to raise relevant issues on appeal" relating to the "trap and trace" warrant because appellate counsel "copied" trial counsel's work, "even typographic errors." Specifically, Woods argues that because his appellate counsel copied from trial counsel and did not update the argument and legal citations, she erroneously claimed there was no law in his favor, even though "controlling authority," State v. Muhammad, held that "pings" were constitutionally protected.[10] The State responds that Woods fails to show either deficiency or prejudice by appellate counsel. We agree with the State.

---

[9] Also, a "petitioner in a personal restraint petition is prohibited from renewing an issue that was raised and rejected on direct appeal unless the interests of justice require relitigation of that issue." Davis, 152 Wn.2d at 671. A petitioner cannot create a " 'new' issue . . . merely by supporting a previous ground for relief with different factual allegations or with different legal arguments." Id. Here, Woods provides no argument as to why the interests of justice are served by relitigating the issue of the major violation aggravator.

[10] Woods notes "[b]y the time of [his] appeal, it had been years" since a key case, Carpenter v. United States, was decided. 585 U.S. 296, 316, 138 S. Ct. 2206, 201 L. Ed. 2d 507 (2018) (holding that an individual's historical cell site location information requires a warrant based on probable cause under the Fourth Amendment in a "narrow" decision that did not express a view on the constitutionality of acquiring real-time cell site location information without a warrant). The other case Woods claims should have been cited and argued, State v.

As with a claim of ineffective assistance of trial counsel, "[t]o prevail on a claim of ineffective assistance of appellate counsel, [petitioner] must demonstrate the merit of any legal issue appellate counsel . . . failed to raise and also show [petitioner] was prejudiced.' " In re Pers. Restraint of Salinas, 189 Wn.2d 747, 760, 408 P.3d 344 (2018) (quoting In re Pers. Restraint of Netherton, 177 Wn.2d 798, 801, 306 P.3d 918 (2013) (internal quotations marks omitted)).

While plagiarism may raise the specter of an ethical issue, re-using research materials is not necessarily deficient. On the other hand, "[w]here an attorney unreasonably fails to research or apply [legal authority] without any tactical purpose, that attorney's performance is constitutionally deficient." In re Pers. Restraint of Tsai, 183 Wn.2d 91, 102, 351 P.3d 138 (2015). "Indeed, '[a]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under Strickland.' " Tsai, 183 Wn.2d at 102 (quoting Hinton v. Alabama, 571 U.S. 263, 274, 134 S. Ct. 1081, 188 L. Ed. 2d 1 (2014)) (alteration in original).

Here, on direct review, both of the cases Woods highlights were argued by the State in its responsive briefing. In the opinion on direct review, the court cited both cases for the proposition that "[b]oth the state and federal constitutions require a search for cell phone location data to be authorized by a warrant based

Muhammad, held that a "ping" of a cell phone is a search under both article I, section 7 and the Fourth Amendment. 194 Wn.2d 577, 596, 451 P.3d 1060 (2019).

on probable cause." Woods, No. 37985-0-III, slip op. at 10. The court then discussed the legality of Shaviri's "trap and trace" warrant, whether that evidence should have been suppressed, and the trial court's denial of a Franks hearing regarding that warrant's affidavit. See Woods, No. 37985-0-III, slip op. at 10-16. Despite being aware of those cases, Division Three nevertheless held that the challenged warrant was valid.

Woods's claim on collateral attack is unavailing, as he does not explain how appellate counsel's failure to include authority that the court nonetheless did consider was deficient. He also fails to establish that he was prejudiced by the omission, i.e., that the court's ruling against him on the warrant issue would have been different had appellate counsel cited the referenced cases.[11] Therefore, we hold that Woods's ineffective assistance of appellate counsel claim fails.

CONCLUSION

The State concedes insufficient evidence supports count III for unlawful possession of oxycodone with intent to deliver, thereby demonstrating that Woods's trial counsel provided ineffective assistance by failing to challenge the sufficiency of the State's evidence on that count. Accordingly, we grant Woods's

---

[11] To the extent Woods argues that Carpenter or Muhammad supports an argument relating to the use of pole camera evidence, as previously noted, Woods conceded his trial counsel did not have this information and could not have made these arguments. See supra at 7 n.4. Thus, appellate counsel likewise could not have raised arguments on appeal based on this evidence obtained after trial.

petition as to count III and reverse his conviction on that count. We otherwise deny Woods's petition.

Chung, J.

WE CONCUR:

Feldman, J.          Brennan, J